**REESE LLP**
Michael R. Reese (California State Bar No. 206773)
*mreese@reesellp.com*
Carlos F. Ramirez (*pro hac vice* to be submitted)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (California State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*

## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MOLLY BROWN and KEPPIE MOORE**,** individually and on behalf of others similarly situated,<br><br>                                        Plaintiffs,<br>        v.<br><br>MADISON REED, INC.,<br><br>                                Defendant. | Case No. 21-cv-1233<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>**California Business and Professions Code § 17200** *et seq.* **and § 17500** *et seq.***; California Civil Code § 1750** *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Keppie Moore and Plaintiff Molly Brown ("Plaintiff Moore" and "Plaintiff Brown," respectively, and collectively, "Plaintiffs"), by and through their undersigned counsel, allege the following class action complaint against defendant Madison Reed, Inc., ("Defendant" or "Madison Reed"), based upon their own personal knowledge and the investigation of their counsel. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      Over time, consumers have become significantly more aware and sensitive to ingredients contained in consumable goods. Today's consumers strive to buy products that deliver optimum results while using less toxic ingredients than the ingredients used in similar products in the past.

2.      Founded in 2014, Defendant manufactures and sells Madison Reed Hair Color Products (the "Products").

3.      Trying to meet today's consumers demands, Defendant claims to sell high quality hair color products that use ingredients that are less "harsh" on hair health, as well as the health of the user, than traditionally-formulated hair color products. In fact, Defendant has specifically stated that its hair color products were designed with consumers' "well-being in mind."

4.      Defendant touts that the Products are made from "Italian formulas" "full of good stuff" that deliver "salon quality hair color" to consumers' homes.

5.      Defendant also routinely touts that the Products are free of certain "harsh ingredients" traditionally found in hair color products. Specifically, Defendant states that the Products are free of, among other things, ammonia, resorcinol and PPD; chemicals that are viewed by consumers as being "bad" for application on hair and the human body.

6.      Defendant makes these representations prominently on the Products' labeling and website, as well as through the marketing of the Products by mail, online, and via television and radio.

7.      Unfortunately for consumers who have purchased the Products, such as Plaintiffs, Defendant's representations about the Products' ingredients' effect on hair and human health are misleading.

8.      For example, while the Products' "ammonia free" claim is technically correct, the ammonia has been replaced with ethanolamine, which some studies have shown is worse for hair than ammonia and is not less "harsh" or harmful to human health.  Ironically, ethanolamine is derived from ammonia since it is created by causing a reaction between ammonia and another chemical that is known to be a human carcinogen.

9.      Defendant replaced the ingredient resorcinol with 2-methylresorcinol.  At least two studies have indicated that both resorcinol and 2-methylresorcinol are nearly equally harmful for thyroid function in humans.   In addition, 2-methylresorcinol is not a well-studied ingredient and, therefore, its safety is still suspect.

10.     Finally, Defendant replaced the ingredient PPD (p-phenylenediamine) with PTDS (toluene-2,5-diamine sulfate), arguably to reduce allergic reactions in certain consumers.  However, PTDS is not much better than PPD as far as toxicity to the human body and, importantly, it does not meaningfully lower allergic reactions to the Products since almost half of consumers that are allergic to PPD also experience an allergic reaction to PTDS.

11.     Accordingly, Defendant's statements about the quality of the Products for hair health, as well as the statements that the Products do not contain certain "harsh ingredients" traditionally found in hair color products, are deceptive.  That is, although Defendant's statements that it does not use "ammonia, resorcinol and PPD" are technically correct, these ingredients' replacements are no better, thereby making Defendant's messaging about the Products materially misleading.  Defendant's other statements about its use of "good stuff" in the Products, like argan oil and keratin, do not do enough to offset its deceptive conduct.  Moreover, Defendant's other statements (described below) that reinforce the Product's health claims are also unlawful.

12.     Defendant has profited enormously from its false and misleading representations that the Products are better for hair health, and less harmful to the health of it users, over traditional hair color products.  This proposed class action seeks to put an end to Defendant's deceptive marketing of the Products.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over the parties in this case.  Plaintiff Moore is a citizen of Altadena, California, which is located in Los Angeles County.  Plaintiff Brown is a citizen of Novato, California, which is located in Marin County.

14.     Defendant's principal place of business is in this District.   Defendant also purposefully avails itself of the California consumer market and sells the Products in at least two locations within this District and other retail locations throughout California, where the Products are purchased by consumers every day.

15.     This court has jurisdiction pursuant to 18 U.S.C. §1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  Members of the plaintiff class are citizens of numerous other States, including New York, New Jersey, Texas and Florida.

16.     Venue is proper in this District under 28 U.S.C. § 1391(a).   Substantial acts in furtherance of the alleged improper conduct occurred within this jurisdiction.  Plaintiff Brown resides within this jurisdiction and bought Defendant's Products within this jurisdiction.

## PARTIES

### Plaintiffs

17.     Plaintiff Keppie Moore is a citizen of Altadena, California.   Plaintiff Moore purchased Madison Reed "radiant Hair Color Kit" (Perugia Black) in, or about, February 2020 from Ulta Beauty located in Pasadena, California.   She relied on Defendant's false, misleading, and deceptive written misrepresentations on its website and on the packaging of the Products that stated it was "Free of" "ammonia," "PPD" and "resorcinol," in deciding to purchase the Products, believing that it was better for her hair and less harmful to her health.  Had Plaintiff Moore known the truth that the Products were not better for her hair or less harmful to her health, she would not have purchased Defendant's Products or would have paid less for them.  In addition, after using

Defendant's hair color product, Plaintiff Moore's scalp became irritated, she suffered some hair loss, and the remaining hair on her head turned dry and brittle.

18.    Plaintiff Molly Brown is a citizen of Novato, California.   Plaintiff Brown purchased Madison Reed "radiant Hair Color Kits" (Catiana Brown and Ravenna Brown) online between early 2016 through 2018 through Defendant's website.  She relied on Defendant's false, misleading, and deceptive written misrepresentations on its website and on the packaging of the Products that stated it was "Free of" "ammonia," "PPD" and "resorcinol," in deciding to purchase the Products, believing that it was better for her hair and less harmful to her health.  Had Plaintiff Brown known the truth that the Products were not better for her hair or less harmful to her health, she would not have purchased Defendant's Products or would have paid less for them.  In addition, after using Defendant's hair color products, Plaintiff Brown's hair turned brittle and she began to suffer some hair loss.  After discontinuing the use of Defendant's hair color products, her hair loss ceased.

**Defendant**

19.    Defendant Madison Reed, Inc. is a Delaware corporation with its principal place of business at 430 Shotwell Street, San Francisco, California 94110, which is located in San Francisco County.

## COMMON FACTUAL ALLEGATIONS

### I.  Defendant's Representations Regarding the Company

20.  Defendant markets itself as an honest company that delivers a better hair color product than those using traditional ingredients and formulas.

21.  On its website (www.madison-reed.com), Defendant describes itself as follows:

We started Madison Reed with a simple mission:

To provide the best, most luxurious hair color, *made with ingredients you can feel good about.*

*We are a hair color company built on integrity, innovation, and love*—for you and for your hair color.  *We've partnered with honest and transparent manufacturers in Italy*—operating under strict EU regulations—to formulate a collection of professional, high-performance hair color and care products.

(available at https://www.madison-reed.com/learn-more)(last visited on January 11, 2021)(emphasis added).

22.  Defendant also states that:

*At the forefront of innovation, we created the first ever Smart 8-Free permanent hair color free of harsh ingredients*: ammonia, paraben, resorcinol, PPD, phthalates, gluten, SLS, and titanium oxide.  And we added hair-loving nutrients including keratin, argan oil, and ginseng root extract to protect and pamper your hair.

*Id.* (emphasis added).

### II.  Defendant's Representations Regarding the Products' Quality and Safety

23.  Defendant markets that its Madison Reed hair color products are better for hair health and less harmful for human consumption than hair color products made using traditional formulas and ingredients.

24.  For example, in a television commercial promoting the Products called "Better Ingredients," Defendant states:

Healthy, shiny, rich with color, beautiful hair is simply captivating.  And now you can get exquisite, salon color like this at home.  Introducing Madison Reed, gorgeous hair color you'll only find online.   *We started by throwing out the usual harsh ingredients, instead Madison Reed is packed with all the things healthy hair loves.*

Madison Reed, *Better Ingredients*, iSpot.tv (2015) https://ispot.tv/a/73x8.

25.      In a promotional message delivered by Defendant's founder and Chief Executive

Officer, Amy Errett, she discusses the Products and the health-driven reasons for the founding of

Madison Reed as follows :

> And for those people that don't know, ***one of the big purpose-driven pieces of Madison Reed is a set of ingredients in our hair color that I believe you could feel good about because we've taken out many of the harsh chemicals***.
>
> * * *
>
> And then one morning, on the way to go to work and I was a venture capitalist at the time, she [referring to her daughter] said the following, mommy are you going to do it? ***And I said, do what?  And she said, help women and save their lives. So when your kid says that to you, . . . you pay attention to those words.***

Madison Reed, *The Year of You: A Message From Our CEO*, YouTube (Jan. 2, 2018),

https://youtu.be/qgSPf7rz8Ks (starting at 00:01:54).

26.      On Defendant's website (www.madison-reed.com), in the "Ingredients" tab (which

can be found under the "About" tab), below the heading "***Ingredients With Integrity***," Defendant

states:

> ***We have a keen interest in your well-being***.  That's why we design our products with ingredients that nurture your hair and avoid those that don't.  Our Italian color-makers bring a detailed eye and generations of experience to their craft. The result is innovative color made with an unwavering commitment to quality that meets the strict safety standards put forth by the European Union (EU), ***which bans chemicals not proven to be safe.***  And, we can all appreciate that.

(available at https://www.madison-reed.com/hair-dye-ingredients)(last visited on July

31, 2020)(emphasis added).

27.      In a description of the product on a third-party retail website, Defendant lists as one

of seven "Key Benefits" of its "Radiant Hair Color Kit:" "Free of: ammonia," "resorcinol" and

"PPD."  *See* Madison Reed Hair Color Product Listing on Ulta.com (available at

https://www.ulta.com/radiant-hair-color-kit?productId=xlsImpprod15741035)(last visited on

January 11, 2021).

28.     As seen below, the Products' packaging also highlights that it is, among other things, "Free of ammonia," "resorcinol" and "PPD."



29.     Defendant entered the men's hair and beard color market in 2020 with the same messaging it has been delivering to women consumers since its founding.  As seen in the screenshot of Defendant's website below, Defendant states that its Products for men are free of "bad stuff" and full of "good stuff."



(available at https://www.madison-reed.com/product/mens-medium-brown)(last visited on January 11, 2021).  Similar messaging to men has also been delivered via radio commercials by Defendant's CEO.

30.     Unfortunately for consumers, Defendant's representations that the Products are "Free of bad stuff, Full of good stuff," or better for your hair and less harmful to your body, are misleading and false.  Rather, as described below, the Products contain replacements for ammonia, resorcinol and PPD that are just as bad or worse than the ingredients they replace.  Indeed, as discussed below, Defendant's purported "better" replacement ingredients pose health risks to both humans and animals, do not meaningfully cure the health issues caused by the ingredients they replaced and some have even been determined to be worse for hair health.  Moreover, Defendant's addition of "good" ingredients to the Products do not offset their deceptive conduct vis-à-vis the "bad" ingredients it states have been removed.

### III.     Defendants' Replacement of Ammonia with Ethanolamine

31.     Ammonia is used in hair dye in order to open up the hair's cuticle (or outside protective coating) so that the dye can deposit onto the hair.  Although Defendant does not use ammonia in its Products, it uses ethanolamine to achieve the same effect.  A direct relative of ammonia, ethanolamine is produced through a chemical reaction of ethylene oxide (a human carcinogen according to the U.S. Environmental Protection Agency)[1] with ammonia.

32.     Ethanolamine, which unsurprisingly has an ammonia-like odor, has been given a toxicity rating that is no better than that of ammonia by the Environmental Working Group ("EWG"),

---

[1] *See* Ethylene Oxide (available at https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-oxide.pdf)(last visited on January 11, 2021).

a "non-profit, non-partisan organization dedicated to protecting human health and the environment."[2] EWG's "Skin Deep" database, which houses toxicity reports for many chemicals used in products meant for human consumption, gives ethanolamine a toxicity rating of 5-6 (10 being the most toxic)(available at  https://www.ewg.org/skindeep/ingredients/702286-ethanolamine/)(last visited on January 11, 2021), while ammonia is rated 2-6 (https://www.ewg.org/skindeep/ingredients/700353-AMMONIA/)(last visited on January 11, 2021).   Thus, according to EWG, Defendant replaced ammonia with a chemical that is no less toxic.

33.     There is also limited evidence that ethanolamine is a teratogen (a chemical that interferes with fetus development) in animals.  In fact, the New Jersey Department of Health (the "NJDOH") states that "[u]ntil further testing has been done, it should be treated as a possible teratogen in humans."  N.J. Dept of Health and Senior Services Hazardous Fact Sheet - Ethanolamine (available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0835.pdf)(last visited on January 11, 2021).

34.     The NJDOH also states that ethanolamine "may damage the liver and kidneys," and that high exposure of this chemical "may affect the nervous system."  *Id*.  Interestingly, ammonia, the purportedly "harsher" chemical that Defendant got rid of and replaced with ethanolamine, causes only one chronic symptom according to the NJDOH: an "asthma-like allergy with shortness of breath, wheezing, coughing and/or chest tightness."  (available at https://www.nj.gov/health/eoh/rtkweb/ documents/fs/0084.pdf)(last visited on January 11, 2021).  If given the choice between the two risks, either an asthma-like allergy on the one hand or damage to the liver, kidney or nervous system on the other, a consumer would probably rather risk using ammonia over ethanolamine.

35.     Moreover, there is some indication that ethanolamine is worse for hair health than ammonia.  In one study, researchers applied different methods to measure hair cuticle damage and protein loss, and found that there is more hair damage from ethanolamine than from ammonia; in some extreme cases as much as 85% more.  *See* Aarron D. Bailey, et al., *Comparison of Damage to*

---

[2] EWG is a 501(c)(3) nonprofit corporation. EWG compiles and maintains the Skin Deep® cosmetic database that gives people practical solutions to protect themselves and their families from everyday exposures to potentially toxic chemicals in personal care and beauty products.

*Human Hair Fibers Caused by Monoethanolamine- And Ammonia-Based Hair Colorants*, JOURNAL OF COSMETIC SCIENCE (Jan.-Feb. 2014) (available at https://pubmed.ncbi.nlm.nih.gov/24602818/)(last visited on January 11, 2021).[3]

36.     Another study found that hair color products that contain ethanolamine versus ammonia are more likely to cause hair loss.  *See* Jung-A Seo et al., *Hydrogen Peroxide and Monoethanolamine Are the Key Causative Ingredients for Hair Dye-Induced Dermatitis and Hair Loss*, JOURNAL OF DERMATOLOGICAL SCIENCE (Apr. 2012)(available at https://pubmed.ncbi.nlm.nih.gov/22269445/)(last visited on January 11, 2021).

## IV.     Defendants' Replacement of PPD with PTDS

37.     PPD, a/k/a p-phenylenediamine, is a permanent hair dye typically found in hair color products.  PPD is rated seven out of ten in EWG's Skin Deep database (available at https://www.ewg.org/skindeep/ingredients/704389-PPHENYLENEDIAMINE/)(last visited on January 11, 2021) and is most commonly associated with allergic reactions.   Madison Reed has replaced PPD with toluene-2,5-diamine sulfate ("PTDS"), arguably to lower the risk of an allergic reaction.

38.     First, the "Skin Deep" database rated PTDS's toxicity as being no better than PPD – it received a 4-7 toxicity rating depending on usage. https://www.ewg.org/skindeep/ingredients/706579-TOLUENE25DIAMINE_SULFATE/)(last visited on January 11, 2021).

39.     In addition, a study found that almost half of the people who are allergic to PPD are also allergic to PTDS.  *See* Andrew Scheman et al., *Alternative Hair-Dye Products for Persons Allergic to Para-Phenylenediamine*, DERMATITIS (Jul.-Aug. 2011)(available at https://pubmed.ncbi.nlm.nih.gov/21781634/)(last visited on January 11, 2021).

---

[3] Ethanolamine is commonly referred to as "monoethanolamine" or "MEA" in order to distinguish itself from diethanolamine (DEA) and triethanolamine (TEA).

40.     Thus, replacing PPD with PTDS does not meaningfully lower the risk that the Products may still cause allergic reactions in some users, and PTDS appears to be just as toxic to the human body as PPD.

**V.     Defendant's Replacement of Resorcinol with 2-methylresorcinol**

41.     Finally, resorcinol reacts with a hair color developer (often hydrogen peroxide) to bond the dye permanently to the hair.  Instead of using resorcinol, Madison Reed uses 2-methylresorcinol in its place.   Although the Skin Deep Database rates 2-methylresorcinol more favorably than resorcinol, the EWG notes that there is not enough data concerning this substance and, accordingly, such data gaps are a concern.  *See* EWG Skin Deep: 2-methylresorcinol (available at https://www.ewg.org/skindeep/

ingredients/700027-2METHYLRESORCINOL/) (last visited on January 11, 2021).

42.     In addition, 2-methylresorcinol was listed as a potential endocrine disruptor[4] by The Endocrine Disruptor Exchange ("TEDX").[5]   *See* TEDX List of Potential Endocrine Disruptors (available at https://endocrinedisruption.org/popup-chemical-details?chemid=188)(last visited on January 11, 2021).   Specifically, TEDX relied on a couple of studies that found that 2-methylresorcinol can disrupt the thyroid's function.  DG Arnott et al., *The effect of compounds allied to resorcinol upon the uptake of radioactive iodine by the thyroid of the rat*, BIOCHEMICAL JOURNAL (1952)(available  at  https://portlandpress.com/biochemj/article/50/4/473/47469/The-effect-of-compounds-allied-to-resorcinol-upon)(last visited on January 11, 2021); RH Lindsay, et al., *Antithyroid effects of coal-derived pollutants*, JOURNAL OF TOXICOLOGY AND ENVIRONMENTAL HEALTH   (1992)(available   at   https://docksci.com/antithyroid-effects-of-coal-derived-pollutants_5e7382b2097c479a378b4583.html)(last visited on January 11, 2021).

---

[4] Endocrine disruptors are chemicals that can interfere with the body's endocrine (hormonal) systems.  These disruptions can cause cancerous tumors, birth defects and other developmental disorders.

[5] For 16 years through December 2019, TEDX operated as a science-based, nonprofit research institute with a mission to reduce the production and use of chemicals that interfere with healthy hormone function.  TEDX used systematic review methods developed by the US National Toxicology Program to answer questions about the hazards chemicals pose.  TEDX was forced to shut down due its operations due to lack of funding.

43.     Thus, Defendant's representations that the Products are free of "resorcinol" appear only to provide consumers with a false sense of hope that whatever has been used to replace it is less harmful.  However, that is not the case, thereby making Defendant's statements in this regard false and misleading.

44.     In sum, while Defendant touts that it has a "keen interest in [consumers'] well-being," that its products are free of many "harsh" ingredients and Defendant's own founder and CEO has stated that the company was founded to "help save women's lives" from certain unhealthy chemicals contained in traditional hair color products, Defendant's replacement ingredients are no better than the ingredients they have replaced.  For these reasons, Defendant has unlawfully deceived consumers and violated numerous California consumer protection laws.

## RULE 9(b) ALLEGATIONS

45.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

46.     Who:  Defendant Madison Reed, Inc.

47.     What:  Defendant falsely and deceptively represented that the Products were designed with consumers' "well-being in mind," and that they did not contain "harsh ingredients" like ammonia, resorcinol and PPD, even though the replacements for these ingredients were just as "harsh" on hair, if not harsher, and were not less harmful to human health.

48.     When:  During the Class Period, as defined below, Defendant falsely and deceptively represented that the Products did not contain "harsh ingredients" like ammonia, resorcinol and PPD, even though the replacements for these ingredients were just as "harsh" on hair, if not harsher, and not much better for human health.

49.     Where: Defendant's false and deceptive representations regarding the Products were made on the Product's packaging, Defendant's website and elsewhere online, mailed advertising and via television and radio commercials.

50.     How: Defendant made oral and written false and deceptive statements that represented that the Products were designed with "integrity" and with consumers' "well-being" in mind, and that they contained ingredients that were better for hair health and less harmful to human health.

51.     Why: Defendant's false and deceptive representations relating to the Products were made for the express purpose of inducing Plaintiffs, and other reasonable consumers, to purchase the Products.  Defendant profited by selling the Products for artificially inflated prices to thousands of consumers.

## CLASS ALLEGATIONS

52.     Plaintiffs bring this action under Fed. R. Civ. P. 23(a)(1)-(4) & (b)(3) on their behalf, and on behalf of all others similarly situated (the "Class"), initially defined as follows:

> All consumers who purchased Defendant's Hair Color Products (the "Class") containing Ethanolamine, 2-Methylresorcinol and Touline-2,5-Diamine Sulfate within the United States and within the applicable statute of limitations period (the "Class Period").  Excluded from the Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors and assigns.

53.     At this time, Plaintiffs do not know the exact number of members in the Class; however, given the nature of the claims and the number of stores and online sales platforms selling the Products, Plaintiffs believe that members of the Class are so numerous that joinder of all members is impracticable.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

> (a) Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiffs and those similarly situated using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the ingredients and qualities of the Products;

> (b) Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Products;

(c) Whether Defendant participated in and pursued the common course of conduct complained of herein; and

(d) Whether Defendant's labeling, marketing, advertising, and/or selling of its Products as being free from "ammonia, "resorcinol" and "PPD," as well as other statements made by Defendant stating that the Products were better for hair health and less harmful to human health than traditional hair color products, constitutes an unfair or deceptive consumer sales practice.

55.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased Defendant's Products subject to deceptive advertising and labeling and sustained damages from Defendant's wrongful conduct.

56.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

58.     The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

59.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

60.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**CAUSES OF ACTION**
**COUNT I**
**Violation of California's Consumers Legal Remedies Act,**
**CAL. CIV. CODE § 1750 *et seq.***
**On Behalf of the Class**

61.     Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing paragraphs as though fully set forth herein.

62.     Plaintiffs bring this claim individually and on behalf of the Class for violation of California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 et seq. (the "CLRA").

63.     Under the CLRA, "goods" means "tangible chattels bought or leased for use primarily for personal, family, or household purposes . . . ." CAL. CIV. CODE § 1761(a).

64.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id*. § 1761(d).

65.     Plaintiffs and the Class members are "consumers" under the CLRA.

66.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id*. § 1761(c).

67.     Defendant is a "person" under the CLRA.

68.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id*. § 1761(e).

69.     Defendant, on the one hand, and Plaintiffs and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other things, Defendant sold the Products to Plaintiffs and the Class members.

70.     Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

71.     Plaintiffs have standing to pursue these claims becaused they have suffered an injury-in-fact and a loss of money/property as a result of the wrongful conducted alleged herein.

72.     Under California Civil Code section 1770(a):

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

* * * * *

(5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

(7) Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another.

(9)  Advertising goods or services with intent not to sell them as advertised.

*Id*. § 1770(a).

73.     As detailed above, Defendant has violated California Civil Code section 1770(a)(5) by representing that the Products it sold had certain characteristics and benefits that they did not have because the ingredients Defendant used to replace certain "harsh" ingredients contained in traditional hair color products are not better for hair health, or less to harmful to human health, as represented by Defendant.

74.     As detailed above, Defendant has violated California Civil Code section 1770(a)(7) by representing that the Products it sold were of a particular quality or grade even though Defendant sold Products that contained ingredient replacements that were not better for hair health, or less harmful to human health, as represented by Defendant.

75.     As detailed above, Defendant has violated California Civil Code section 1770(a)(9) by advertising and marketing the Products with the intent not to sell them as advertised because Defendant sold Products that contained ingredient replacements that were not better for hair health, or less harmful to human health, as represented by Defendant.

76.     Additionally, or alternatively, Defendant has violated the CLRA by making material omissions.  At the time Plaintiffs and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiffs and the Class members the material fact that the Products contained ingredient replacements that were not better for hair health or less harmful to human health than the ingredients used in traditional hair color formulas.

77.     Indeed, as the manufacturer and seller of the Products, Defendant had exclusive

knowledge that the Product were not as represented by Defendant.

78.    When Plaintiffs and the Class members purchased the Products from Defendant, they did not know that the Products were not as represented by Defendant.

79.    Plaintiffs and the Class members would not have purchased the Products from Defendant, or would have paid less for them, but for the misleading representations and/or omissions by Defendant detailed above.

80.    The Products purchased by Plaintiffs and the Class members from Defendant were worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium price for the Products on account of Defendant's misrepresentations and/or omissions detailed herein.

81.    Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions relating to the sale of the Products.

82.    Plaintiffs, individually and on behalf of the Class members, request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code section 1780(a)(2).  If the Court does not restrain Defendant from engaging in these practices in the future, Plaintiffs and the Class members will be harmed in that they will continue to purchase the Products that are not better for hair health or less harmful to human health than hair color products made using traditional hair color formulas and ingredients.

83.    Pursuant to California Civil Code § 1780(a)(1), (a)(3), (a)(4) and (a)(5), Plaintiffs seek individually and on behalf and the Class members actual damages, restitution, punitive damages, attorneys' fees and costs of litigation, and any other relief the court deems proper.

84.    Pursuant to California Civil Code § 1780(b)(1), Plaintiffs seek on behalf of all Class members who are senior citizens or disabled as defined in California Civil Code § 1761(f) and (g), an additional award of up to $5,000 for physical, emotional or economic damage.

85.    Pursuant to California Civil Code § 1782(a), Plaintiffs' counsel notified Defendant in writing by certified mail, return receipt requested, of Defendant's particular violations of § 1770 of the CLRA and demanded that Defendant rectify its violations. Plaintiff sent that letter on January

15, 2021. To date, Defendant has not agreed to rectify its violations of the CLRA. Accordingly,

Plaintiffs seek damages on behalf of themselves and the Class.

<u>**COUNT II**</u>
**Violation of California's False Advertising Law,**
**CAL. BUS. & PROF. CODE § 17500 et seq.**
**On Behalf of the Class**

86.     Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing

paragraphs as though fully set forth herein.

87.     Plaintiffs bring this claim individually and on behalf of the Class for violation of

California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 et seq. (the "FAL").

88.     Defendant has violated California Civil Code section 17500 by representing that the

Products it sold were of a particular quality or grade that it did not have because Defendant, in fact,

sold Products that were not better for hair health or less harmful to human health as represented by

Defendant.

89.     Additionally, or alternatively, Defendant has violated the FAL by making material

omissions.  At the time Plaintiffs and the Class members purchased the Products, Defendant had a

duty to disclose to Plaintiffs and the Class members the material fact that the Products contained

ingredient replacements that were not better for hair health or less harmful to human health than the

ingredients used in traditional hair color formulas.

90.     Indeed, as the manufacturer and seller of the Products, Defendant had exclusive

knowledge that the Product were not as represented by Defendant.

91.     When Plaintiffs and the Class members purchased the Products from Defendant, they

did not know that the Products were not as represented by Defendant.

92.     Plaintiffs and the Class members would not have purchased the Products from

Defendant, or would have paid less for them, but for the misleading representations and/or

omissions by Defendant detailed above.

93.     The Products purchased by Plaintiffs and the Class members from Defendant were

worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium

1   price for Products that were not as represented by Defendant.

2   94.   Plaintiffs and the Class members were injured in fact and lost money as a result of

3   Defendant's representations and/or omissions relating to the sale of the Products.

4   95.   Plaintiffs, individually and on behalf of the Class members, request that the Court

5   enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged

6   herein.  If the Court does not restrain Defendant from engaging in these practices in the future,

7   Plaintiffs and the Class members will be harmed in that they will continue to purchase Products that

8   are not better for hair health, or less harmful to human health, as represented by Defendant.

9   96.   Therefore, Plaintiffs pray for injunctive and other public relief consistent with the

10   relief (such as restitution) that the California Supreme Court discussed in *McGill v. Citibank, N.A.*,

11   393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir.

12   2019).

**COUNT III**
**Violation of California's Unfair Competition Law,**
**CAL. BUS. & PROF. CODE § 17200 et seq.**
**Unlawful, Unfair, and Fraudulent Prongs**
**On Behalf of the Class**

17   97.   Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing

18   paragraphs as though fully set forth herein.

19   98.   Plaintiffs bring this claim individually and on behalf of the Class for violation of the

20   unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, CAL. BUS. &

21   PROF. CODE § 17200 et seq. (the "UCL").

22   99.   The circumstances giving rise to Plaintiffs' and the Class members' allegations

23   include Defendant's corporate policies regarding the sale of the Products.

24   100.   Under the UCL, "unfair competition" means and includes "any unlawful, unfair or

25   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

26   act prohibited by" the FAL. CAL. BUS. & PROF. CODE § 17200.

27   101.   By engaging in the acts and practices described herein, Defendant has committed one

28   or more acts of "unfair competition" as the UCL defines the term.

102.    Defendant has committed "unlawful" business acts or practices by violating the CLRA and the FAL, as detailed above.

103.    Defendant has committed "unfair" business acts or practices by, among other things:

a.      engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the members of the Class;

b.      engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and

c.      engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

104.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to reasonable consumers, including Plaintiffs and the Class.

105.    Defendant has committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers that purchased the Products.

106.    Additionally, or alternatively, Defendant has violated the FAL by making material omissions.  At the time Plaintiffs and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiffs and the Class members the material fact that the Products contained ingredient replacements that were not better for hair health or less harmful to human health than the ingredients used in traditional hair color formulas.

107.    When Plaintiffs and the Class members purchased the Products from Defendant, they did not know that those products were not better for hair health or less harmful to human health over hair color products made using traditional formulas and ingredients.

108.    Plaintiffs and the Class members would not have purchased the Products from Defendant, or would have paid less for them, but for the misleading representations and/or omissions by Defendant detailed above.

109.    The Products purchased by Plaintiffs and the Class members from Defendant were worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium

price for the Products on account of Defendant's misrepresentations and/or omissions detailed herein.

110.    Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions relating to the sale of the Products.

111.    In accordance with California Business and Professions Code section 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

112.    Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of the Products unjustly acquired by Defendant through acts of unlawful, unfair, and/or fraudulent competition.

113.    Therefore, Plaintiffs pray for injunctive and other public relief consistent with the relief (such as restitution) that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment individually and on behalf of the proposed Class as follows:

A.    An order certifying the proposed Class; appointing Plaintiffs as representatives of the Class; and appointing their undersigned counsel as Class counsel;

B.    A declaration that Defendant is financially responsible for notifying members of the Class of the pendency of this suit;

C.    A declaration that Defendant has committed the violations of law alleged herein;

D.    An award of restitution pursuant to California Business and Professions Code §§ 17203, 17535;

E.    An award of disgorgement pursuant to California Business and Professions Code §§ 17203, 17535;

F.    An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203, 17535, and California Civil Code § 1780,

requiring Defendant to remove language from the Products' packaging, marketing, and advertising that represents that the product is free of "bad stuff" and/or certain "harsh" ingredients including, among others, ammonia, resorcinol and PPD, and any other misleading language relating to the Products' ingredients;

G.   An order requiring Defendant to pay actual, statutory, punitive, and all other damages;

H.   An order awarding Plaintiffs and the Class the reasonable costs and expenses of suit, including their attorneys' fees;

I.   An order awarding pre- and post- judgment interest to the extent the law allows; and

J.   Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury for all claims so triable.

DATED:  February 19, 2021                    **REESE LLP**

By:   */s/ Michael R. Reese*
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Carlos F. Ramirez (*Pro hac vice* to be submitted)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*