**REESE LLP**
Michael R. Reese (State Bar No. 206773)
*mreeesellp@reesellp.com*
Carlos F. Ramirez (Admitted *pro hac vice*)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MOLLY BROWN and AUDREY SHEFFLER, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MADISON REED, INC., a Delaware corporation,<br><br>Defendant. | Case No.  3:21-cv-01233-WHO<br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**California Business and Professions Code § 17200 *et seq.* and § 17500 *et seq.*; California Civil Code § 1750 *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Molly Brown and Plaintiff Audrey Sheffler ("Plaintiff Brown" and "Plaintiff Sheffler," respectively, and collectively, "Plaintiffs"), by and through their undersigned counsel, allege the following class action complaint against defendant Madison Reed, Inc., ("Defendant" or "Madison Reed"), based upon their own personal knowledge and the investigation of their counsel. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.   Over time, consumers have become significantly more aware and sensitive to ingredients contained in consumable goods. Today's consumers strive to buy products that deliver optimum results while using less toxic ingredients than the ingredients used in similar products in the past.

2.   Founded in 2014, Defendant manufactures and sells Madison Reed Hair Color Products (the "Products").

3.   Trying to meet today's consumers demands, Defendant claims to sell "salon" quality hair color products that use ingredients that are less "harsh" on hair health, as well as the health of the user, than traditionally-formulated hair color products.

4.   Because traditional permanent hair color products are known to contain chemicals that tend to irritate, including the very toxic and noxious/harsh smelling ammonia, Defendant's Products were a refreshing and highly-welcomed addition to the hair color market.

5.   In delivering its "healthful product messaging," Defendant has touted, and continues to tout, that the Products are free of certain "harsh ingredients" traditionally found in hair color products. Specifically, Defendant states that the Products are free of certain ingredients that it has educated consumers to be "harsh" over the course of at least five years like the "offending," irritating PPD, resorcinol, parabens, phthalates, SLS, etc. and, obviously, ammonia; a chemical that has traditionally been viewed by consumers as being bad for application on hair and the human body.

6.   Why Defendant touts the Products are "Free of ammonia" is no mystery since that is likely that most commonly known of the "harsh" ingredients in permanent hair dyes, which exhibits a potent enough smell to clear a room. Defendant likely touts that the Products are "Free of" PPD because it tends

to cause an allergic reaction in many users, except that Defendant replaced PPD with an ingredient that still causes an allergic reaction in a whopping 1 out of every 2 individuals allergic to PPD. Defendant makes other representations about its removal of certain other "harsh" ingredients that it replaces with ingredients unknown to reasonable consumers that are no less harsh or harmful.

7. Defendant makes these representations prominently on the Products' website and labeling, as well as through the marketing of the Products by mail, online, and via television and radio. In fact, Defendant has run commercials on SiriusXM for years now, narrated by Defendant's founder Amy Errett, boasting that the Products do not contain "harsh" ingredients like "ammonia" and, instead, that they are full of "good" ingredients. These commercials continue to run daily on an almost hourly basis.

8. Importantly, and as shown below through publicly-available reviews of the Products by consumers, Defendant's marketing and advertising campaign has been very effective in convincing consumers that the Products are gentler, safer and healthier than other permanent hair dyes on the market.

9. Unfortunately for consumers who have purchased the Products, such as Plaintiffs, Defendant's representations about the Products' ingredients' positive effect on hair and human health do not allow for consumers to realize the danger that its Products pose consumers such as, among other things, hair loss, scalp irritation and overall damage to their hair. In fact, one of the chemicals Defendant used to replace ammonia, which it has called "harsh" for years now in its advertising, is not only made from ammonia, but it has also been shown through scientific studies to cause hair loss and more damage to hair than the chemical it replaced. Defendant is well-aware of these studies.

10. Defendant is also aware of the danger posed by the Products because thousands of consumers have reported their hair failing, as well as scalp irritation and itchiness, shortly after or during actual use of the Products. These complaints have been made directly to Defendant and on publicly-accessible consumer product review sites. And if there is any doubt whether Defendant is aware of reviews posted on third-party sites, like Trustpilot (www.trustpilot.com) for example, Defendant has gone onto these websites and responded directly to aggrieved consumers on numerous occasions.

11. Despite the above, Defendant provides no warning about these consequences, and in fact continues to make numerous assertions about the gentle, safe and healthy nature of the Products on its

website, and via other forms of advertising and marketing.  For example, Defendant's website makes statements relating to how its Products do not contain the "usual harsh ingredients" generally found in hair color products and instead that they are "packed with all of the things healthy hair loves."  On its "Ingredients" webpage, which is prominently titled "Ingredients with Integrity," Defendant states that it has "a keen interest in your well-being.  That's why we design our products with ingredients that nurture your hair and avoid those that don't."  Defendant also represents that its Products meet "***the strict safety standards put forth by the European Union (EU), which bans chemicals not proven to be safe.***" (emphasis added).

12.     Defendant also provides no warning on its labeling about the risks to the hair and scalp, and its ingredient list is barely intelligible due to the sheer volume of highly complex chemicals listed in it, which the reasonable consumer is not likely to know about.

13.     For example, the reasonable consumer reading the ingredient list would not know that the "ammonia" Defendant stated that the Products were "Free of" on its front label would need to be replaced with an ingredient that performs a similar function to ammonia.  The reasonable consumer would also not know that ammonia was replaced by a product called ethanolamine, a known irritant, because this product is virtually unknown to the reasonable consumer.  The reasonable consumer would also not know that ethanolamine is made from ethylene oxide, recognized by the U.S. Environmental Protection Agency as a carcinogen, and ammonia.  The reasonable consumer would also not know that it is purchasing a product that contains an ammonia derivative because the name "ethanolamine" does not convey the fact that it is related to ammonia.  Finally, the reasonable consumer would also not know that studies have shown that ethanolamine can cause hair loss and more damage to hair than ammonia itself.

14.     The reasonable consumer would not know that the "PPD" Defendant stated that the Products were "Free of" on its front label, and elsewhere, would be replaced with an ingredient that would need to perform a function similar to PPD.  The reasonable consumer would not know that PPD was replaced by PTDS, a chemical virtually unknown to the reasonable consumer.   To add further to the confusion, PTDS is disclosed in the ingredient list as Toluene 2,5-Diamine Sulfate.  Sadly, PTDS causes allergic reactions in 50% of the users that are allergic to PPD.  Also, because the name Toluene 2,5-

Diamine Sulfate is wholly-distinct from the name PPD, it makes it virtually impossible for consumers to know to research Toluene 2,5-Diamine Sulfate to see if could also cause an allergic reaction.  For similar reasons, Defendant's disclosure of resorcinol's replacement in the ingredient list fails to protect Defendant from liability.

15.     Defendant also highlights on its website, the radio, online and via mailers the fact that the Products do not contain ammonia, PPD, and resorcinol, and fails to warn consumers about the known risk factors of these ingredients' replacements.

16.     Despite being aware of the issues with its Products, Defendant conceals and fails to disclose that the Products cause hair loss, breakage and shedding, by intentionally blaming other risk factors such as "pregnancy" or "stressors" like "weight loss, heightened stress, high fevers, surgery, recovering from an illness and stopping hormonal birth control pills."  Defendant even goes as far as blaming hair breakage on certain types of "pillowcases."

17.     Undeterred by established medical science, Defendant even attempts to convince consumers that its Products do not cause hair loss because the hair dye cannot penetrate the scalp.  This statement is contradicted by a process called "dermal absorption" whereby a chemical enters the body through skin.  Dermal absorption is universally recognized by the medical community and U.S. governmental agencies.  Interestingly, Defendant's statement also appears to be belied by a representation on Defendant's website where it states that the Products use some type of "cream-based formula" that "blocks the hair dye from penetrating the scalp."

18.     Defendant is also aware that the Products cause hair loss and scalp irritation from thousands of its clients, yet does nothing about it.

19.     For example, as shown below, there have been numerous complaints posted on Defendant's Facebook page about these problems.  Some of the complaints even include before and after photos of consumers that show the incredible amount of hair loss suffered after using the Products.  On occasion, Defendant will even respond to these complaints, thereby explicitly acknowledging the reports of the damage to hair and scalp associated with the Products.  Defendant has also responded to similar complaints that have been posted on its own blog.

20.     By way of just one example, here is a complaint left on Defendant's blog:[1]

> ***Funny how you fail to mention that ethanolamine the product you use in your ammonia free hair color can cause hair loss...........I found out the hard way....shame on you for not warning people that this could be a problem*** so if they start experiencing decreased volume in their hair they can STOP USING YOUR PRODUCT BEFORE they really damage their hair!

(emphasis added).  The following is Defendant's unempathetic response to the above complaint:

> Hi Gilda, we are sorry about your experience. We do see you were already assisted by a team member but if you need any additional assistance, please let us know.

21.     Thankfully, consumer product review websites have spread the word about the hair loss and scalp irritation caused by the Products.  One such site, highya (www.highya.com), cites research indicating that ethanolamine, ammonia's replacement, can damage hair more so than ammonia and can even lead to hair loss.[2]  In addition, customer reviews posted on highya's website also confirm the damage to hair and scalp caused by the Products.  One such review, simply titled "Hair loss," states that after using it on two different occasions a year apart, the user experiences hair loss each time, as well as an itchy scalp.  In another review, titled "Madison Reed made me go bald, avoid!", the reviewer states that the Products "ruined my life."

22.     To date, Defendant has not recalled the Products, has not provided any warnings of the known risks, has not reformulated the Products, has denied that the Products cause the reported health issues, has not offered its customers any compensation for their damages and continues to tout via radio commercials, its website, mailers and elsewhere that the Products contain "good" ingredients and are devoid of "harsh ingredients."

23.     Had Plaintiffs and the Class (as defined below) members known that the Products would cause hair loss, scalp irritation and other problems, they would not have purchased the Products or would have paid substantially less for them.

---

[1] https://www.madison-reed.com/blog/the-full-report-on-thinning-hair (last visited on Feb. 21, 2022).
[2] https://www.highya.com/madison-reed-reviews (last visited on Feb. 21, 2022).

24.     Plaintiffs and the Class members have been damaged and suffered an injury in fact caused by the Products' failure to perform as advertised by Defendant; Defendant's representations about the Products that prevented consumers from realizing the risks that the Products could cause, among other things, hair loss and scalp irritation; and Defendant's failure to warn consumers of said risks. Accordingly, Plaintiffs and the Class members seek compensatory damages, as well as equitable and injunctive relief, and any other relief the Court may deem appropriate.

## JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District.  Defendant also purposefully avails itself of the California consumer market and sells the Products at five locations within this District and other retail locations throughout California, where the Products are purchased by consumers every day.

26.     This court has jurisdiction pursuant to 18 U.S.C. §1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the Federal Courts in any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

27.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct occurred within this jurisdiction.  Defendant resides and sold the Products within this jurisdiction.

## PARTIES

### Plaintiffs

28.     Plaintiff Brown is a citizen of Novato, California.  Plaintiff Brown purchased Madison Reed "radiant Hair Color Kits" (Catiana Brown and Ravenna Brown) online between early 2016 through 2019 through Defendant's website.  As described in further detail below, she relied on Defendant's false, misleading, and deceptive written misrepresentations on its website and on the packaging of the Products that stated it was "Free of" "ammonia," "PPD" and "resorcinol," in deciding to purchase the Products, believing that it was better for her hair and less harmful to her health.  Had Plaintiff Brown known the

truth that the Products were not better for her hair or less harmful to her health, she would not have purchased Defendant's Products or would have paid substantially less for them. In addition, after using Defendant's hair color products, Plaintiff Brown's hair turned brittle and she began to suffer some hair loss. After discontinuing the use of Defendant's hair color products, her hair loss ceased.

29.     Plaintiff Sheffler is a citizen of Defiance, Ohio. Plaintiff Sheffler bought two Madison Reed "radiant Hair Color Kits" (Sondrio Brown) around February 2021 from the Madison Reed website. As described in further detail below, in deciding to purchase the Products she relied on a host of Defendant's false, misleading, and deceptive written misrepresentations she learned via a video commercial she watched on the Spectrum app, as well as the Madison Reed website. She also relied on the packaging of the Product that stated it was "Free of" "ammonia," "PPD" and "resorcinol." All of the above, led her to believe that the Products were better for her hair and less harmful to her health and, consequently, she decided to buy them. However, after using only two bottles of the Product, Plaintiff Sheffler suffered scalp irritation and hair loss. The scalp irritation lasted around 2 months. The hair she lost has started growing back.

30.     Had Plaintiffs known the truth that the Products were not better for their hair or less harmful to their health, and that they risked scalp irritation or hair loss, they would not have purchased Defendant's Products or, at a minimum, would have paid substantially less for them.

**Defendant**

31.     Defendant is a Delaware corporation with its principal place of business at 430 Shotwell Street, San Francisco, CA 94110, which is located in San Francisco County.

**COMMON FACTUAL ALLEGATIONS**

I.    **Defendant's Representations Regarding the Company**

32.     Defendant markets itself as an "honest" company that delivers a better hair color product than those using traditional ingredients and formulas.

33.     On its website (www.madison-reed.com), Defendant describes itself as follows:

We started Madison Reed with a simple mission:

> To provide the best, most luxurious hair color, ***made with ingredients you can feel good about.***
>
> ***We are a hair color company built on integrity, innovation, and love***—for you and for your hair color.  ***We've partnered with honest and transparent manufacturers in Italy***—operating under strict EU regulations—to formulate a collection of professional, high-performance hair color and care products.

(available at https://www.madison-reed.com/learn-more)(last visited on Jan. 11, 2021)(emphasis added).

34.    Defendant also states that:

> At the forefront of innovation, we created the first ever Smart 8-Free permanent hair color ***free of harsh ingredients: ammonia, paraben, resorcinol,*** PPD, phthalates, gluten, SLS, and titanium oxide.  And we added hair-loving nutrients including keratin, argan oil, and ginseng root extract to protect and pamper your hair.

*Id.* (emphasis added).

## II.    Defendant's Representations Regarding the Products' Quality and Safety

35.    Defendant markets that its Madison Reed hair color products are better for hair health and less harmful for human consumption than hair color products made using traditional formulas and ingredients.

36.    For example, in a television commercial promoting the Products called "Better Ingredients," Defendant states:

> Healthy, shiny, rich with color, beautiful hair is simply captivating.  And now you can get exquisite, salon color like this at home.  Introducing Madison Reed, gorgeous hair color you'll only find online.  ***We started by throwing out the usual harsh ingredients, instead Madison Reed is packed with all the things healthy                                    hair                                    loves.***

Madison Reed, *Better Ingredients*, iSpot.tv (2015) https://ispot.tv/a/73x8.

37.    In a promotional message delivered by Madison Reed's founder and Chief Executive Officer, Defendant discusses the Products and the health-driven reasons for the founding of the company as follows:

> And for those people that don't know, ***one of the big purpose-driven pieces of Madison Reed is a set of ingredients in our hair color that I believe you could feel good about because we've taken out many of the harsh chemicals***.

9

* * *

> And then one morning, on the way to go to work and I was a venture capitalist at the time, she [referring to her daughter] said the following, mommy are you going to do it? **And I said, do what?  And she said, help women and save their lives.  So when your kid says that to you, . . . you pay attention to those words.**

Madison Reed, *The Year of You: A Message From Our CEO*, YouTube (Jan. 2, 2018), https://youtu.be/qgSPf7rz8Ks (starting at 00:01:54).

38.     For years now, Defendant has bombarded the airwaves, typically on news channels transmitted via SiriusXM, with its uniform, nationwide marketing campaign centered on its representations that it has removed the "harsh" ingredients typically present in hair color products like "ammonia" and replaced them with "good stuff."  In fact, as of the date of the filing of this Complaint, Defendant continues that satellite radio advertising campaign to this very day touting that the Products are made from "good" ingredients.  Plaintiffs does not have copies of these commercials, and they are not publicly available in any type of archive known to Plaintiffs.  However, copies of the commercials are likely in the possession of Defendant and certainly discoverable should this matter proceed to trial.

39.     Importantly, as shown below in numerous customer reviews, consumers have purchased the Products believing that the they were gentler, safer and healthier in light of Defendant's advertising campaign.

40.     Defendant delivers similar messaging through its website www.madisonreed.com.  For example, in the "Ingredients" tab (which can be found under the "About" tab), below the heading "***Ingredients With Integrity***," Defendant states:

> **We have a keen interest in your well-being**.  That's why we design our products with ingredients that nurture your hair and avoid those that don't.  Our Italian color-makers bring a detailed eye and generations of experience to their craft. The result is innovative color made with an unwavering commitment to quality that meets the strict safety standards put forth by the European Union (EU), **which bans chemicals not proven to be safe.**[3]  And, we can all appreciate that.

---

[3] Likely realizing the falsity, or at a minimum misleading nature, of this representation, Defendant has removed it from its website.  *See* ¶ 44, *infra*.

(available at https://www.madison-reed.com/hair-dye-ingredients)(last visited on July 31, 2020)(emphasis added).



41.     In a description of the product on a third-party retail website, Defendant lists as one of seven "Key Benefits" of its "Radiant Hair Color Kit:" "Free of: ammonia," "PPD," "Resorcinol." *See* Madison Reed Hair Color Product Listing on Ulta.com (available at https://www.ulta.com/radiant-hair-color-kit?productId=xlsImpprod15741035)(last visited on July 11, 2021).[4]

42.     As shown below, the Products' packaging also reinforces its pervasive marketing message that the products are gentler, safer and healthier, and free of "harsh" ingredients, by placing a promise on the front label of the Products, in the first bold white letters on the front label appearing against a dark background, that among other things, it is "Free of ammonia, parabens, resorcinol, PPD, phthalates, etc."

43.     Defendant's website is also chock full of false representations about the safety and healthfulness of the Products.  For example, on the Madison Reed's website under the "about" tab a page titled "Story," as shown below, Defendant boasts about having removed "harsh" ingredients like ammonia,

---

[4] Likely realizing the misleading nature of this representation, Defendant has probably asked Ulta to revise these statements since they no longer appear on the Ulta website.

resorcinol, PPD, parabens, phthalates, etc. from the Products and replaced them with good ones. Defendant attempts to further sell consumers that representation by noting that it has partnered with companies in Italy that help them create products "according to strict European Union (EU) safety standards for hair color formulation[s]."



Screenshot of Defendant's Website on February 21, 2022.

44.     On another webpage on its site, as shown below, Defendant states that, "When it comes to our formulas, we don't mess around." Defendant also states that, "We're as passionate about what we put into our formulas as what we leave out." Boasting once again that the Products abide by strict European Union (EU) safety standards for hair color formulation, Defendant states that it "*will never use certain potential ingredient offenders in our formulas*," as well as that it is "*shout-it-from-the-rooftops proud to use ingredients that nourish your hair.*" (emphasis added).



Screenshot of Defendant's Website on February 21, 2022.

45.     On that same page, as shown below, Defendant represents that the Products contain a conditioner that provides "conditioning benefits to the hair" that "creates a barrier on the scalp from the dyes to the formula."  Why Defendant would want to highlight this attribute of its products is confusing because according to an article posted on the Madison Reed blog by dermatologist Dr. Zoe Diana Draelos hair dyes cannot enter the body through the scalp.  *See* Dr. Zoe Diana Draelos, What Causes Hair Loss? Reasons & Solutions, Explained, Madison Reed Blog (June 16, 2021), https://www.madison-reed.com/blog/reasons-and-solutions-for-hair-loss (last visited on Feb. 7, 2020).    Indeed, in another article posted on the Madison Reed blog, Dr. Draelos specifically states that ethanolamine, Madison Reed's replacement for ammonia "cannot penetrate the scalp . . . ."  *See* Dr. Zoe Diana Draelos, All About Ammonia-Free Hair Color, Madison Reed Blog (June 23, 2021), https://www.madison-reed.com/blog/reasons-and-solutions-for-hair-loss (last visited on Feb. 7, 2020).  However, this position regarding ethanolamine's penetrability into the human body is directly contradicted by at least one source known to Plaintiffs: the New Jersey Department of Health and Senior Services.  *See* Hazardous Substance Fact Sheet (available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0835.pdf (stating that "Ethanolamine can affect you when breathed in and ***by passing through your skin.***)(emphasis added) (last visited on Feb. 7, 2020).  Moreover, to the extent that Defendant is taking the position that the scalp is somehow less penetrable than the skin on other parts of the human body, that theory has been debunked.  *See* Nina Otberg, et al., *The role of hair follicles in the percutaneous absorption of caffeine*, BRITISH JOURNAL OF CLINICAL PHARMACOLOGY, (Dec. 7, 2007)(available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2291387/)(last visited on Feb. 21, 2022)(finding that a substance applied to the scalp appeared in the blood stream four times quicker when applied to open hair follicles versus hair follicles that were blocked with a "varnish-wax-mixture").  The above statements on Madison Reed's blog appear to be yet another attempt by Defendant to conceal the adverse reactions caused by the Products.

**CREAM CONDITIONING FORMULA**

The delivery system of any hair color formula plays a key role not just in the performance of the color, but also in how the color affects the health of the hair and scalp. Because our Radiant Hair Color is a unique cream conditioning formula, it has clear benefits over gel hair color formulas commonly found in other hair color brands. The cream-based formula of our Radiant Hair Color:

- Creates a more consistent and uniform color result
- Achieves superior gray coverage
- Provides conditioning benefits to hair
- Helps creates a barrier on the scalp from the dyes in the formula
- Helps avoid overlap with prior applications of hair color, and therefore less likely to overprocess hair over time

Screenshot of Defendant's Website on February 21, 2022.

46.     Further on that same page, as shown below, Defendant represents that the Products contain a conditioner that provides "conditioning benefits to the hair" that "creates a barrier on the scalp from the dyes to the formula."[5]  Also, that the Products are not only devoid of "harsh ingredients," but that they were tested under the supervision of the independent dermatologist Dr. Draelos.[6]  Importantly, Defendant also assures consumers that the independent study confirmed that the Products are "***non-damaging to hair and . . . non-damaging to scalp health.***"  (emphasis added).

**DERMATOLOGIST TESTED**

We didn't just formulate our hair color without harsh ingredients,* we went even further and tested our permanent hair color formula under the supervision of an independent dermatologist, Dr. Zoe Draelos, to clinically confirm the safety and benefits of our Smart 8-Free formula Radiant Hair Color on the hair and scalp. The study demonstrated that when used as directed, Radiant Hair Color is non-damaging to hair and is non-damaging to scalp health. * Free of ammonia, PPD, resorcinol, parabens, phthalates, gluten, SLS, and titanium dioxide

Screenshot of Defendant's Website on February 21, 2022.

47.     In addition, as depicted above, Defendant once again educates consumers about the fact that, among others "bad" ingredients, the Products are free of the "harsh" ingredients: ammonia, PPD,

---

[5] This statement is belied by Defendant's statement in another portion of its website where it argues that hair dyes cannot penetrate the scalp.  *See* ¶45, *supra*.
[6] Although Defendant claims on its website that Dr. Draelos is "independent," Defendant dedicates an entire webpage on its site to Dr. Draelos that sings her praises.  The webpage also provides links to several articles posted by Draelos on Defendant's website, all of which appear to be pro-Madison Reed pieces written to address certain issues with the Products, including hair loss and the use of ethanolamine over ammonia.  https://www.madison-reed.com/blog/author/zoe-diana-draelos-md?utm_source=google&utm_medium=cpc&utm_campaign=Madison+Reed-GGL-Core-NB-DSA-SEM-New-NA-NA-NA&utm_content=&gclid=Cj0KCQiArt6PBhCoARIsAMF5wajq-9NUuDL6QXezCkvVzPMnJzaUBMVk7W2IFXagRVqp9T30botJZmwaArImEALw_wcB&gclsrc=aw.ds (last visited on Feb. 21, 2022).

resorcinol, parabens and phthalates.  Defendant's persistent and ubiquitous years-long education of "ammonia" as a "harsh" versus non-harsh ingredient, i.e. an ingredient gentle on hair, reinforced for consumers the messaging that a product that does not contain ammonia is safer than the hair color products that contain them.  The fact that almost **all** hair color products on the market contain "ammonia" as an ingredient, a fact that Defendant clearly knows and exploited, further drove home the point for consumers that Defendant's Product is the gentler, safer and healthier choice for hair, scalp and human health.

48.     As shown below, Defendant continues to drive its messaging that its products are safer and better than other products by representing that they have been "crafted by expert colorists so you can color at home with total confidence."  Again, by aligning itself with "experts," like the "honest and transparent manufacturers in Italy" touted above, Defendant continues to sell consumers on the fact that they can trust that the Products are going to be gentler, safer and healthier because no expert colorist acting reasonably under the circumstances would ever want to apply a product on a customer's hair that would cause an adverse reaction, such as hair loss, scalp irritation, damage to hair, etc.  Indeed, any expert colorist not seeking to avoid harm to its clients' hair or scalp would soon be out of employment, or worse.



Screenshot of Defendant's Website on February 21, 2022.

49.     In a blog post by Defendant on October 7, 2020, titled "Ingredients That Love Your Hair Back," and in more posts since then, Defendant reinforces its healthfulness messaging, and continues to actively conceal the adverse reactions caused by the Products, with the following:

> This Saturday, October 10th, is National Love Your Hair Day, so we wanted to take a minute to shout out our favorite hair-loving ingredients that make our formulas so special. ***Yes, our hair color is free of ammonia, PPD, resorcinol, parabens, phthalates, gluten, SLS, and titanium dioxide—but we're as passionate about what we put into our color as what we leave out.***
>
> \*   \*   \*
>
> Our color is crafted in Italy according to strict European Union (EU) safety standards for hair color formulation—meaning, ***we will never use certain potential ingredient offenders in our formulas. We opt for nourishing ingredients instead, so after you use our Radiant Hair Color, your hair won't feel dry or straw-like the way it sometimes can after coloring. No thank you!*** Your strands will actually look and feel healthier, thanks to three hero ingredients—keratin, argan oil, and ginseng root extract.

50.     Defendant entered the men's hair and beard color market in 2020 with the same messaging it has been delivering to women consumers since its founding.  As depicted in in the screenshot of Defendant's website below, Defendant states that its Products for men are free of "bad stuff" and full of "good stuff."



(available at https://www.madison-reed.com/product/mens-medium-brown)(last visited on Jan. 11, 2021). Similar messaging to men has also been delivered via radio commercials by Defendant's CEO.  And although technically marketed to men, there is nothing preventing a woman from using these products.

51.     Shown below, in six separate photographs, is an advertisement Defendant sent consumers via U.S. Mail around January 2021, with its infamous tagline, "Goodbye Harsh Ingredients" and a list of

those ingredients. The mailer also delivered consumers, in writing, its "100% Money Back Guarantee." The flyer also delivers the messaging that consumers' experience will be comparable to that of a professional beauty salon.



SECOND AMENDED CLASS ACTION COMPLAINT









1
2
3
4
5
6
7
8
9
10



11
12    52.    Shown below is a portion Defendant's website's landing page as of the date of the filing

13    of this Complaint where it further tries to conceal the risks of damage to hair and scalp, among other

14    adverse reactions, caused by its Products by touting that they are made with ingredients that are "non-

15    damaging to hair---goodbye harsh ingredients."

16
17
18
19
20
21
22
21



22
23
24
25    Screenshot of Madison Reed's Website's Landing Page on February 21, 2022.

26
27

SECOND AMENDED CLASS ACTION COMPLAINT

53.     Finally, as shown below, Defendant's widespread, uniform healthful campaign can be seen as far back as 2016.  Specifically, Defendant represented that it "design[s its] products with ingredients that nurture your hair and avoid those that don't," and that it adheres to strict safety standards that "ban ... chemicals not proven to be safe."  Although the representation below regarding adhering to standards that "ban chemicals not proven to be safe" probably does not appear on Defendant's website as of the date of this Complaint because it realized that the statement was either false or misleading, the statement was still there until July 31, 2020 and likely after that.  Importantly, while there may have been some stylistic/aesthetic changes to its advertising campaign over time, as well as the removal of some of the false/misleading statements, Defendant's central messaging that the Products are safer than other permanent hair dyes *has never changed.*

# Ingredients with Integrity

—

We offer luxurious at-home hair color with a low chemical profile. It's as simple as that. We design our products with ingredients that nurture your hair and avoid those that don't. Our Italian hair color-makers bring a detailed eye and generations of experience to their craft. The result is innovative color made with an unwavering commitment to quality that meets the strict safety standards set by the European Union (EU), which bans chemicals not proven to be safe. We can all appreciate that.

Screenshot of Madison Reed's Website Around 2016.

54.     Unfortunately for consumers, and in direct contrast to the above statements made on Defendant's website, the Products are, in fact, not "non-damaging" to hair or the scalp and are not "free" of "harsh ingredients."

55.     In fact, instead of "saving" women's lives, the Products actually endanger them, as well as damage their scalp and hair, thereby injuring thousands of unsuspecting consumers.

56.     Indeed, as described below, the Products contain a replacement for ammonia called ethanolamine that is known to cause hair loss and damage to hair as evidenced by studies performed on it and as experienced first-hand by Plaintiffs, and ironically, is made from the "harsh" ingredient Defendant claimed to have removed only to replace it with its derivative.  Defendant is well-aware of the studies that have shown this.

57.     PPD's replacement, PTDS, is not substantially less allergic than PTDS and, as shown below in publicly-available product reviews, consumers have suffered allergic reactions to the Products thinking that it does not contain PPD, or any replacement of it likely to also cause an allergic reaction.  By way of analogy, it is as if a product claimed to be free of allergy-causing peanuts but the nut used in its place is also very likely to cause an allergic reaction.   Finally, resorcinol's replacement, 2-methylresorcinol, is just as harmful as the ingredient it replaced.

### III.    Defendants' Replacement of Ammonia with Ethanolamine

58.     Ammonia is used in hair dye in order to open up the hair's cuticle (or outside protective coating) so that the dye can deposit onto the hair.  Although Defendant does not use ammonia in its Products, it uses a chemical called ethanolamine to achieve the same effect.  Ethanolamine is produced through a chemical reaction of ethylene oxide (a human carcinogen according to the EPA)[7] with ammonia, which is ironic because this is the ingredient that Defendant routinely boasts it got rid of due to its "harshness."

59.     Ethanolamine, which unsurprisingly has an ammonia-like odor, has been given a toxicity rating that is no better than that of ammonia by the Environmental Working Group ("EWG"), a "non-profit, non-partisan organization dedicated to protecting human health and the environment."[8]  EWG's "Skin Deep" database, which houses toxicity reports for many chemicals used in products meant for human consumption, gives ethanolamine a toxicity rating of 5-6 (10 being the most toxic)(available at https://www.ewg.org/skindeep/ingredients/702286-ethanolamine/)(last visited on Feb. 21, 2022), while ammonia is rated 5-6 (https://www.ewg.org/skindeep/ingredients/700353-AMMONIA/)(last visited on Feb. 21, 2022).  Thus, according to EWG, Defendant replaced ammonia with a chemical that is no less toxic.

---

[7] *See* Ethylene Oxide (available at https://www.epa.gov/sites/production/files/2016-09/documents/ethylene-oxide.pdf)(last visited on Feb. 21, 2022).

[8] EWG is a 501(c)(3) nonprofit corporation. EWG compiles and maintains the Skin Deep® cosmetic database that gives people practical solutions to protect themselves and their families from everyday exposures to potentially toxic chemicals in personal care and beauty products.

60.     Indeed, several studies that have been brought to Defendant's attention, have shown that ethanolamine is more harmful to hair and human health than ammonia.[9]

61.     For example, one study found that hair color products that contain ethanolamine versus ammonia are more likely to cause hair loss.  *See* Jung-A Seo et al., *Hydrogen Peroxide and Monoethanolamine Are the Key Causative Ingredients for Hair Dye-Induced Dermatitis and Hair Loss*, JOURNAL OF DERMATOLOGICAL SCIENCE (Apr. 2012)(available at https://pubmed.ncbi.nlm.nih.gov/22269445/)(last visited on Feb. 21, 2022).

62.     In another study, researchers applied different methods to measure hair cuticle damage and protein loss, and found that ethanolamine is more irritating and more damaging to hair than ammonia; in some extreme cases the damage was as much as 85% more.  *See* Aarron D. Bailey, et al., *Comparison of Damage to Human Hair Fibers Caused by Monoethanolamine- And Ammonia-Based Hair Colorants*, JOURNAL OF COSMETIC SCIENCE (Jan.-Feb. 2014) (available at https://pubmed.ncbi.nlm.nih.gov/24602818/)(last visited on Feb. 21, 2022).[10]

## IV.    Defendants' Replacement of PPD with PTDS

63.     PPD, a/k/a p-phenylenediamine, is a permanent hair dye typically found in hair color products.   PPD is rated seven out of ten in EWG's Skin Deep database (available at https://www.ewg.org/skindeep/ingredients/704389-PPHENYLENEDIAMINE/)(last visited on Feb. 21, 2022) and is most commonly associated with allergic reactions.   Madison Reed has replaced PPD with toluene-2,5-diamine sulfate ("PTDS"), arguably to lower the risk of an allergic reaction.

---

[9] Defendant has also been made aware of certain other health risks associated with ethanolamine.  For example, that there is also limited evidence that ethanolamine is a teratogen (a chemical that interferes with fetus development) in animals.  In fact, the New Jersey Department of Health (the "NJDOH") states that "[u]ntil further testing has been done, it should be treated as a possible teratogen in humans."  N.J. Dept of Health and Senior Services Hazardous Fact Sheet - Ethanolamine (available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0835.pdf)(last visited on Feb. 21, 2022).  Also, that the NJDOH also states that ethanolamine "may damage the liver and kidneys," and that high exposure of this chemical "may affect the nervous system."  Id.  Interestingly, ammonia, the purportedly "harsher" chemical that Defendant got rid of and replaced with ethanolamine, causes only one chronic symptom according to the NJDOH: an "asthma-like allergy with shortness of breath, wheezing, coughing and/or chest tightness."  (available at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0084.pdf)(last visited on Feb. 21, 2022).
If given the choice between the two risks, either an asthma-like allergy on the one hand or damage to the liver, kidney or nervous system on the other, a consumer would probably rather risk using ammonia over ethanolamine.
[10] Ethanolamine is commonly referred to as "monoethanolamine" or "MEA" in order to distinguish itself from diethanolamine (DEA) and triethanolamine (TEA).

64.     First, the "Skin Deep" database rated PTDS's toxicity as being no better than PPD – it received a 7 toxicity rating depending on usage.  https://www.ewg.org/skindeep/ingredients/706579-TOLUENE25DIAMINE_SULFATE/)(last visited on Feb. 21, 2022).

65.     In addition, a study found that almost half of the people who are allergic to PPD are also allergic to PTDS.  *See* Andrew Scheman et al., *Alternative Hair-Dye Products for Persons Allergic to Para-Phenylenediamine*, DERMATITIS (Jul.-Aug. 2011)(available at https://pubmed.ncbi.nlm.nih.gov/21781634/)(last visited on Feb. 21, 2022).

66.     Thus, replacing PPD with PTDS does not meaningfully lower the risk that the Products may still cause allergic reactions in some users, and PTDS appears to be just as toxic to the human body as PPD.

## V.     Defendant's Replacement of Resorcinol with 2-methylresorcinol

67.     Finally, resorcinol reacts with a hair color developer (often hydrogen peroxide) to bond the dye permanently to the hair.  Instead of using resorcinol, Madison Reed uses 2-methylresorcinol in its place.  Although the Skin Deep Database rates 2-methylresorcinol more favorably than resorcinol, the EWG notes that there is not enough data concerning this substance and, accordingly, such data gaps are a concern. *See* EWG Skin Deep: 2-methylresorcinol (available at https://www.ewg.org/skindeep/ingredients/700027-2METHYLRESORCINOL/) (last visited on Feb. 21, 2022).

68.     In addition, 2-methylresorcinol was listed as a potential endocrine disruptor[11] by The Endocrine Disruptor Exchange ("TEDX").[12]  *See* TEDX List of Potential Endocrine Disruptors (available at https://endocrinedisruption.org/popup-chemical-details?chemid=188)(last visited on Feb. 21, 2022).  Specifically, TEDX relied on a couple of studies that found that 2-methylresorcinol can disrupt the thyroid's function.  DG Arnott et al., *The effect of compounds allied to resorcinol upon the uptake of radioactive iodine by the thyroid of the rat*, BIOCHEMICAL JOURNAL (1952)(available at

---

[11] Endocrine disruptors are chemicals that can interfere with the body's endocrine (hormonal) systems.  These disruptions can cause cancerous tumors, birth defects and other developmental disorders.

[12] For 16 years through December 2019, TEDX operated as a science-based, nonprofit research institute with a mission to reduce the production and use of chemicals that interfere with healthy hormone function.  TEDX used systematic review methods developed by the US National Toxicology Program to answer questions about the hazards chemicals pose.  TEDX was forced to shut down due its operations due to lack of funding.

https://portlandpress.com/biochemj/article/50/4/473/47469/The-effect-of-compounds-allied-to-resorcinol-upon)(last visited on Feb. 21, 2022); RH Lindsay, et al., *Antithyroid effects of coal-derived pollutants*, JOURNAL OF TOXICOLOGY AND ENVIRONMENTAL HEALTH (1992)(available at https://docksci.com/antithyroid-effects-of-coal-derived-pollutants_5e7382b2097c479a378b4583.html) (last visited on Feb. 21, 2022).

69.     Thus, Defendant's representations that the Products are free of "resorcinol" appear only to provide consumers with a false sense of hope that whatever has been used to replace it is less harmful. However, that is not the case, thereby making Defendant's statements in this regard false and misleading.

70.     In sum, while Defendant touts that it has a "keen interest in [consumers'] well-being," that its products are free of many "harsh" ingredients and Defendant's own founder and CEO has stated that the company was founded to "help save women's lives" from certain unhealthy chemicals contained in traditional hair color products, Defendant's replacement ingredients are no better than the ingredients they have replaced.  For these reasons, Defendant has unlawfully deceived consumers and violated numerous California consumer protection laws.

## VI.   Thousands of Consumers Have Confirmed Their Reliance on the Widespread, Uniform Advertising Campaign by Defendant About the Product's Healtfulness

71.     Below are just some of the consumer complaints on the internet that confirm the far-reach of Defendant's widespread, uniform advertising campaign over the span of at least five years that continues to this very day.[13]  Not listed in this Complaint are the countless incidents of injuries to scalp and skin, allergic reactions and hair loss suffered by consumers that relied on Defendant' misleading statements about the Products' safety.  The reviews come from a variety of sources.[14]

---

[13] Plaintiffs were able to obtain access to the complaints herein because they are publicly available.  Thus, it is likely that there are many more that are in Defendant's sole possession, custody and control, and may only be obtained through discovery.  In addition, there would likely be more customer complaints on Defendant's website; however, as noted by several of the complaints listed here, Defendant apparently makes it very difficult for consumers to leave complaints on its website.  Defendant's alleged concealment of bad customer reviews speaks volumes of its unfair conduct and active concealment of known adverse reactions to, and design defects of, the Products.

[14] These were copied directly from the internet and have not been altered in any way, including by the addition of [sic] where it may be appropriate to do so.

72.     The complaints below confirm several things: Defendant's "heavily-advertised," "highly advertised," "hype[d]" healthfulness campaign has led consumers to buy the Products believing they are gentler, safer and healthier than traditional hair color products; the Products have caused severe damage to hair and injuries to scalp and, most important, Defendant is well-aware of the problem with the Products (including how people allergic to PPD used it to only find out the hard way that they are also allergic to PTDS), yet Defendant has failed to do anything to fix it (even denying aggrieved consumers refunds at times).

73.     The complaints also confirm that: Defendant attempts to conceal the problems with the Products by making it "very difficult" for consumers to leave negative reviews on the Madison Reed website, which explains why it shows only *five* reviews regarding hair loss versus the hundreds of complaints available on other customer product review sites; Defendant does not provide injured consumers with the type of customer support it states its "professional colorists" will provide them; Defendant does not stand behind the Products; consumers who had used other at-home hair dyes in the past, or who had their hair colored at salons for years, had never suffered the harm to hair and scalp they suffered with the gentler/safer/healthier Madison Reed Products; Defendant tends to not want to honor its "100% Money Back Guarantee" and Defendant often answers negative reviews with unempathetic responses that fail to own that the Products are, in fact, as Madison Reed represents them to be.

74.     Defendant's misleading statements have also led people who are allergic to PPD to use it only to suffer the allergic reaction they were looking to avoid in the first place

75.     Sadly, some of the complaints also document some of consumers' pleas to Defendant to reformulate the Products to help prevent any further instances of, among other things, hair loss, scalp irritation and damage to hair.  Some complaints even speak of how the Defendant should be sued via a class action lawsuit, as well as taken out of business.

- January 2017: Hello everyone. I am touching bases. It is Jan.04, 2017… my head STILL has serious bumps, and underneath the skin are big mounds, I can feel them. I have these burning headaches, and Madison Reed is STILL ignoring me. I texted the Dermatologist today asking for an Emergency Appointment. I had so hoped that I would just heal up and get on with life. That is not the way things are going. I pray that these bumps are not skin cancer, but I do know this…they are NOT Normal, and they

were NOT there until that day..in Sept. when I turned 60, and I put Genova Red coloring on my head. I want to make it clear that I only put the Genova Red on my hair for less than five minutes, and my head was burning as if on fire!! Upon rinsing this mixture out, big Clumps of hair came out in my hands, down the drain it went, and hairs are STILL falling out, but not quite as badly as in the months previous to now. Friends noticed the thinning of my hair, and as I have stated, I thought that may have been due to Stress. Of course, I reconciled myself with the "no ammonia" advertising, "surely it is Not the Madison Reed Hair Product"! I told myself. Well, for Baby Fine hair…this stuff is hard core!! My scalp itches like crazy, but I do not scratch it. The last thing I need is a Secondary Infection. I would NOT recommend this product to anyone. I go to their site and see all these happy women, with their hair looking so wonderful, and I get Literally sick to my stomach, after all I have been through. I have a BAG of my hair, and there are Still big patches of Bald Spots on my head, this Chemical Burn was Very Serious. I have some new Greys at the temple and I wear them with Pride!!! ***Never again will I let an Advertising Ploy lure me into using a Chemical Alteration that is dangerous to my well being. This scenario has been literally One of the very Worst situations I have endured in my life.*** The "cavalier" attitude that the aforementioned company has about this situation is off the charts not only Insensitive but apparently they must think that either I will die very soon, or I will stop this crusade of Insight. THEY KNOW…about the contraindications of this product, why else would anyone put out a "Powder" Root touch up? Their offer to PAY for my Dermatology Appointment, apparently has been forgotten as my emails, phone calls and texts are being Ignored. I am sharing this true story to prevent some other person from the Horrible experience that I am having. *Id.* https://ireadlabelsforyou.com/madison-reed-hair-dye-review/

- January 2018: Don't walk, RUN away from Madison Reed products. ***They masquerade as a natural alternative.*** Madison Reed products are dangerous. I know. I have been harmed by them. They contain: lye, known carcinogens and petroleum based irritants. Worst of all, they will not respond after the sale, they will not help. They are a scam. *Id.*

- January 2019:  The hair color arrives in fancy packaging with two pairs of gloves, barrier cream, shampoo, and conditioner. I have medium golden brown hair and lots of grey roots. The grey coverage was not better than store-bought brands. I developed a scalp rash and around my face. My scalp is red and itchy all the time. I tried canceling my subscription, but the buttons are greyed out (disabled) on the website. ***The company marketing is very clever.***  *Id.*

- August 2019: Garnier discontinued the hair color I have been using for over a decade and I have been on the hunt for a replacement. ***I thought I'd try Madison Reed because they said they were healthier for hair.*** I will say, that I enjoyed the packaging and the fact that my hair didn't smell too chemically the next day. But I found the color to be much farther from the example on the website. And afterward, I noticed an increase in how much hair was on my hands in the shower and my sink after styling. About a week later I noticed I could see much more of my scalp than I used to and started investigated

what could have caused it. It seems, instead of ammonia, Madison Reed uses ethanolamine to help the dye attach to the hair. One of the side effects from this chemical is hair loss! I'm hoping it'll grow back, but I just used Madison Reed last month, so it'll be a few months before I know for sure.  It looks like I will continue to search for a replacement color elsewhere. Id. https://www.highya.com/madison-reed-reviews?page=3#reviews (last visited on Feb. 21, 2022).

- December 2019: I used this brand for a few years. I really liked the color and the process. Some time after switching to MR I started losing clumps of hair.  I saw doctors, got medical tests, took supplements, saw more doctors, did hair treatments, etc. You name it, I did it. I continued to use MR hair dye and my hair continued to fall out. I had thick beautiful hair when I started MR, Now my hair is much less dense, and thin. It never occurred to me that this "safe" "nourishing" MR color was causing the damage. Until while doing some research, I found out what they substitute for the ammonia, which is ethanolamine, is very damaging and has been found to cause hair loss. I was shocked. I stopped using this dye as soon as I found out several months ago. ***I am so upset that a company that touts itself as being a safer, better alternative uses a chemical known to cause hair loss.  I would not wish hair loss on anyone. I have yet to see if it will be reversible. I strongly do not recommend this product.*** https://www.highya.com/madison-reed-reviews?page=2#reviews (last visited Feb. 21, 2022).

- March 2021: Only gave 1 star so I could write this review. Oh how I wished I'd done my due diligence and read reviews prior to using this product! As an older woman, my hair was my ONLY beauty asset! Very long and thick and compliments were often received. I know it's vain, but my hair was the ONLY thing that made me feel special, at least with respect to my appearance.  I've lost half of the hair I had and as an older woman, I doubt it will ever grow back. Also skin still irritated well over a month's time. ***SHAME ON YOU MADISON REED FOR TOUTING YOUR PRODUCT IS SAFE. I HOPE YOU GET 'YOURS' SOMEDAY!*** To make things worse, I now have a lump in my left groin muscle. Lymph nodes acting up. I'm very concerned about the ethanolamine that's probably circulating throughout my lymphatic system, blood and skin. If anyone has initiated or knows about a class-action lawsuit, please advise. I know when Plaintiff prevail, they rarely come out with much in the way of $$$. The attorneys are the winners, but IT'S WORTH IT TO GO AFTER THIS COMPANY ANY PUT THEM OUT OF BUSINESS  Id.

- April 2021: I have always had thick beautiful hair and as I now see I am also experiencing extreme hair loss!! ***I wish I could sue this company for all the false claims!!!!*** So angry as my hair was so thick and beautiful before using this terrible product!  Id.

- May 2021: ***I saw the heavily advertised photos and info about this wonderful hair color with "gentle" ingredients. I bought into the hype and ordered a kit.*** So incredibly disappointed and I wish I had researched further before ordering. I followed the directions and after rinsing began to see large amounts of hair falling towards the

drain. I was horrified because I have soft, fine hair and can't afford to lose any. As the weeks have passed I am still shedding hair on my pillow and clothes. This has NEVER happened in all my years of coloring using Ion at Sally's Beauty Supply. On top of all the hair shedding, there was almost zero coverage of my grays at the roots. Thanks for making a complete mess of my hair. Change your formula and stop doing this to people!! *Id.*

- May 2021: Madison Reed has been disastrous for my hair. I started using the product during Covid.  My hair has slowly turned dry, frizzy, is falling out and most awful of all has "broken" off at around 3 inches from root.  I have colored my hair for 20 years mostly just covering emerging grey at roots.  It has always been in great condition.  I never put two and two together until I was alerted by my hairdresser that something very bad to is taken place and had I changed my hair color product?  I decided to really look into reviews by customers of Madison Reed. ***Prior to this moment I relied on the Madison Reed website and all the good things they say are genuine reviews of their product.***  I have previously used Vivitone and my hair was always shiny and great! Sadly the store that supplied it closed during the pandemic and I felt safer receiving something by mail order to avoid shops and stores.  This was a big mistake .  Somehow I got sucked into the repeat subscription but fully intend to stop and return the latest box that arrived yesterday! *Id.*

- June 2021***: I bought this color because it claimed to be more gentle.*** Very familiar with coloring from a box, but during lock down, and my hair dresser was closed, I bought this product. I have lost at least half my hair from it breaking off at the root portion that I colored. The rest is a frizzy mess. I decided to look it up before I used it again. They don't tell you they use chemicals that are worse than most other dyes***. Truly should be a crime to misrepresent themselves like that.*** And it is a very difficult return process. *Id.*

- June 2021: This is the worst home hair coloring experience I've ever gotten. ***I tried it because I saw so many advertisements that it's healthier for you. NO IT IS NOT!*** After leaving the color dye on for less than 15 mins my scalp started to itch so I decided to rinse it off sooner than the recommended 35 mins.  Thank god it did! My hair fell out in clumps! When I tell you clumps, 1/4 of my hair fell out in the shower! This is the worst worst product ever! I never write reviews but I had to so I can warn other people not to use these products.  I feel so terrible because my hair is so dry and brittle now. I cannot even brush it without 10-15 strands coming out each time. It's been a few days and my hair is still falling out. Please STAY AWAY! Don't fall for their advertisements like I did! Biggest mistake of my life! NEVER AGAIN! *Id.*

- June 2021: I've colored my own hair many times without issue.  I had started being a little fancy and going to a salon before the pandemic. My roots were getting crazy, so I tried this brand. I followed the instructions, but holy moly, I've never experienced damage like this before, not even when I bleached my own hair. I had to pre-condition my hair before shampooing for weeks. The color was off too.  I reached out to their CS and instead of offering me a refund, they suggested I order more color to dye it again.

SECOND AMENDED CLASS ACTION COMPLAINT

There was no way…. It's almost impossible to leave a negative review on their site. ***And while I've unsubscribed from their emails multiple times, I still get marketing emails from them.*** *Id.*

- June 2021: MASSIVE hair fall out after usage. ***If Madison Reed boasts that they are 'better for your hair' color, then as customers we have the right to ask what Madison Reed is doing to continuously improve and investigate the formula to ensure it is the safest and best possible permanent hair care solution for people. If the company has removed ammonia in exchange for other potentially more harmful ingredients, that is simply a marketing ploy.*** Please be cautious especially when using the darker colors, hair color is toxic, I'm not sure this is a safer replacement. I have large bald patches on my head and all over thinning since using regularly. I have lost more than 50% of my hair. I started using Madison Reed every 4 weeks about one year ago. *Id.*

- June 2021: Worst hair color I've ever tried. Completely ruined my hair ! ***I thought it would be better than other hair colors since it's supposedly more natural but the opposite is true.*** It made my hair thin, dry and brittle and it falls out when I comb it as a result. If I could give it 0 stars I would. Stay away. *Id.*

- July 2021: ***I too started using this hair color during covid as it was highly advertised on social media as paraben free, ammonia free.*** So thinking I was treating my hair better was absolutely untrue. I finally learned over a year later that ETHANOLOMINE, which is the ingredient used in their color IS WORSE THAN AMMONIA OR BLEACH. it is more toxic and damaging to your hair. So, my beautiful curly wavy hair which I've been coloring for over thirty years is now brittle , breaking and coming off in chunks. I didn't add that my color is now brassy and horrible , reddish, when I was always a dirty blonde. I thought it was stress, hormones, but no, it was this horrible fraudulent product. I'm just sorry I took so long to figure it out. If others want to take action in closing this company permanently, I would suggest coming together. Post it on social media, let people know to stay away. https://www.trustpilot.com/review/madison-reed.com?page=3 (last visited on Feb. 21, 2022).

- July 2021: This is so upsetting!!! I usually went into a salon for coloring my grays but during Covid I relied upon at home color. ***I tried Madison Reed because it's supposed to be safe.*** I noticed my hair has become ridiculously frizzy and dry (somethings I've never had to deal with before). I put it all together after doing some research and realized it's the color formula! This is the worst my hair has ever been and I don't know how to get my hair's life and health back !!! *Id.*

- July 2021: I'm living a nightmare! My sister and I both started using Madison Reed about a year and a half ago, I can honestly say both of us have the worst hair we've ever had!! I have lost between a third and a half of my hair and my sis has bald spots and always wears a ball cap when she goes out of the house. ***I never put it together that it could be the hair dye because it claims to be one of the most non toxic dyes on the planet.*** I spent a little over 500.00 to do a complete thyroid blood work/dr. visit to

see if that was the cause of my hair loss. The lab results showed normal thyroid function. Thank God I stumbled on this blog!!! It has to be the ethanolomine, a powerful chemical that opens up the hair cuticle to absorb the dye. I had no idea that this could be causing these problems until I read all these other testimonies of hair loss, dry and brittle hair!! I have to put coconut oil in my hair every day or it's just a fuzzy mess!! I'm done with permanent hair dyes, none of them are safe!! I'm actually going to give henna a try, I know it's messy and not easy to rinse out but it has to be better than going bald!!  *Id.*

- July 2021: This place is the worse. ***I used this product based on them claiming their products are non-toxic as Im going through fertility and keeping away from all toxic products.*** I colored my hair twice and my hair is falling out in chucks. I'm DISGUSTED by their repetitive response. They need to be closed forever!!! On top of it the hair colorist didn't even know what she was doing and when I had my hair blowout, I can do a better job instead of paying $30. The worse blowout I've had.  *Id.*

- July 2021: ***This company does a great job of advertising but its product is horrible.*** I have colored my hair for 25+ years and have never had this experience before. I have used Madison Reed 3 times and the root touch up a couple of times. I loved the color but my hair is looking terrible. Dry, brittle, fuzzy, life-less, and thinning. I have rarely written a review but this info really needs to get to the public. Don't use this product!! I usually use henna or color from the co-op, but on occasion have used drug store brands and also did in my younger days. They never effected my hair this way. Don't be swayed by the advertising...listen to all these reviews.  *Id.*

- August 2021: ***I saw ads for this hair dye for years and after noticing more grays I decided to try it at home and subsequently in a Madison Reed salon.*** I liked the initial color at home, but I noticed that my hair was very dry and despite a recent cut, I needed to trim off inches and inches of dried ends which is not a good look with curls. I tried the color a second time in the salon. The woman who did my hair did not protect my skin and I ended up with a ring of red around my head days before an important event. She also used the wrong color and after two weeks the color turned burnt orange, which does not mix well with the grays that are growing in. To make matters worst, I had so much hair breakage that I went from a thick head of curly hair to male pattern baldness in both the front and top of my scalp. Currently I have to wear my hair in a comb over to cover the bald spots. I have had three children and none of the hair loss, which commonly commonly occurs post-partum. I know that I am not prone to hair breakage and thinning. I am so disappointed, it will take me years to grow back the hair that I have lost. I would absolutely skip this product.  *Id.*

- August 2021: I have been using madison reed color for the past 2 years and now know why my hair is falling out!!! I am so mad!! I though it was from a change in hormones but no! Please someone tell me there is a class action suit for this. Damn this company for their unhealthy product. My scalp itches and hurts. ***All I want to do is start over like I never saw it before.***  *Id.*

- October 2021: I have been a loyal customer of Madison Reed since March 2019. I love the products & the way it makes my hair feel healthier than other boxed colors or even professional coloring. I have never had any problems.  I HAVE been experiencing hair loss noticeably. I just chalked it up to getting older. I didn't realize the extent of my hair loss until I saw a picture of myself outside in the sunlight which showed my entire scalp on top. I ended up having to photoshop the picture to make it look like I had hair. My hairdresser used to tell me how thick my hair was. I stopped seeing her when I went to Madison Reed because I no longer needed the coloring treatment. I have been taking hair vitamins, tried Rogaine and other hair loss methods. Nothing has been working. **Last night it dawned on me. Could my "safe" hair color be causing my hair loss?** I was so shocked to find out that the product Ethanolamine that is used in place of Amonia is more harmful and has a higher rate of causing hair loss. I am so saddened and disappointed in this. I do not know what to do about my hair loss and I do not know what products are truly safe for hair color.  *Id.*

- October 2021: *I can't believe I fell for it. You would think after the 2020 and 2021 experience we've all been living in that I would stop believing marketing just because somebody tells me it's so.* 😡  I've been coloring my hair for 30 years and because of Covid I decided to use a healthy hair coloring kit. Enter madison reed  My first use was late summer 2020. In November 2020 is when I realized my hair was falling out… A lot.  It freaked me out so I decided not to go to the salon to have them pull on my hair and continue to use the product.  I'm horrified at how thin my hair is. I used to have beautiful long hair and now it's super thin and I have to always gently pull it back so that I don't feel the hair falling on my arms. That causes me to panic more.  All this time I thought it was my nutrition and I kept trying to eat healthier and healthier. I thought maybe it was my hormones or my thyroid.  Tonight I was praying and asking God to help me know what I have to do to stop my hair from falling out and it crossed my mind to check out MR.  I found this site. Thank you so much for being willing to share your journey. There was one post that said she started in January but by September the hair was growing back. Gosh I hope I don't have to wait that long to start to see a change.  Thank you so much for sharing your testimonies and yes I'm up for a class action lawsuit. If I knew how to do it I would bring it.  *Id.*

- October 2021: You will lose money and hair trying to save money here[.] My experience with MR is that it reconfirms you should spend money to get a reliable, if pricey, salon that knows what it is doing, to treat your hair, and not economize.  MR products have made my hair feel like straw, and given my hair a texture that it never in my life had.  I went here to save money, and instead, fear I will need to cut my very long and FORMERLY healthy hair to give it a chance to be healthy again.  I had to have it corrected twice, because the color was so weird and ashy, but getting it to go to the color it was supposed to be made my hair like sticky straw. It has utterly changed the texture of my hair.  **They emphasize that they don't use ammonia, and make that one of their primary selling points, but what they do use is far worse. Ethanolamine is what they use instead.**  Trustpilot doesn't allow links, but if you go to the NIH Medical Library site called PubMed, and enter hydrogen peroxide and monoethanolamine, and hair dye, and monoethanolamine and ammonia, into the search

SECOND AMENDED CLASS ACTION COMPLAINT

bar, you will find studies which tell you that data indicate finding ways to lower the toxicity of the ammonia would be better for our health than using monoethanolamine. I wish I had paid more attention to this, as the other data you will find if you go to that site is that MR's chem is a known cause of hair loss and dermatitis (itchy scalp, or worse, highly allergic and irritated scalp or area that it touches).  Several other studies exist which indicate that over time, exposure to ethanolamine can cause nerve damage, which makes me wonder how long before stylists employed by MR will start to find themselves experiencing weird neurological symptoms.  fDO NOT USE THESE PRODUCTS, is my suggestion, and be sure to research whatever you do choose to use. *Id.*

- October 2021: ***I must say their false advertising is expertly done, as I ended up getting my hair colored at the color bar.*** The hair dresser didn't seem very experienced and recommended a shade I believe it was called Tuscany brown. He assured me it would look great. I thought it was too dark and wanted something a lot lighter. Went with the recommendation. Had a permanent full hair color done. Sat in a chair for a long time with no one checking in while the staff was somewhere in the back. A fellow customer asked me questions about their products as their was no staff around! Finally someone came to wash off the hair. I was then motioned towards a blow drying station where I could blow dry my hair. Looked at the color in the mirror and didn't like it at all. Way too dark, actually a very ugly shade of brown. No shine, very dull. Hair texture felt very rough. Since then, I have had lumps of hair fall out whenever I run my fingers through my hair or comb/brush it. Hair is lifeless and limp. It did cover the greys. Now I'm letting the hair grow, which it thankfully is doing. Will get hair cuts at a professional salon and leaving the grey on top alone while the color hopefully fades. This will take over a year to recover from. Then only a professional hair stylist at a professional salon will ever color my hair. Even the hair colors sold at grocery stores are better than Madison Reed!  https://www.trustpilot.com/review/madison-reed.com (last visited on Feb. 21, 2022).

- November 2021: It just keeps getting worse. I lost so much hair with using MR, had scalp burns, as previously noted in my 1st review. Well here I am 2 months later and the hair that didn't fall out is like straw. It is so dry and brittle. I have spent a ton on Masques for my hair. My goal is to get back to lap swimming and I am afraid to even venture back into the pool because of the further damage that may happen. ***I can not believe how awful this product is, and every time I hear an ad on Siriusxm I want to pay for an ad to tell people to stay far away from this product. Don't do it!!!!***  *Id.*

- November 2021: I have been using MR (and signed up for membership to get discounts), before the pandemic and noticed my hair is a lot thinner and also, my hair started falling out! I couldn't figure out what's causing my hair loss until I searched the website for MR reviews, ***I thought this product is safe as it's free of ammonia, but not so as it contain a chemical more damaging than ammonia.*** I still have a box left of 6NGV, Root Touch Up, Prosecco Reviving Gloss, Dorato Color Therapy and shampoo. Don't use this product. I will try to contact MR and get refunds or something. Will provide an update later.  *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

21

22

23

24

25

26

27

- January 2022: ***Wow! I started using MR about 2 months ago when I was interested in getting "safe" salon color at home. I am sad that I too was fooled.*** Since using the product, I have lost so much hair! And it continues to significantly break! I have been worried about my health...only to find this site and realize that it is the MR hair color!! I am devastated! I had thick, long healthy hair 2 months ago :( This product should not be used by anyone! MR - you should be put out of business! Absolutely Terrible!  *Id.*

- January 2022: This is one of the first negative reviews I've written in my life. I am writing in hopes of saving people from going through what I went through. ***Madison-reed presents itself as a company with smart safe products that will protect your hair.*** I took their color advice and dyed my hair.  Almost immediately afterward my hair started falling out.  It has been over a month and it is still breaking and falling out every single day in large amounts.  I have dyed my hair for years with a different dye and this has never happened.  Please do not use this product if you care about your hair at all. It is damage wrapped up in a pretty package.  *Id.*

- January 2022: My hair was so thick that I was always charged extra when going to the salon for highlights. When the pandemic started, there was a time when my salon closed and I started coloring my hair at home. ***I wanted salon quality so I signed up with Madison Reed.*** Almost immediately, my hair started to fall out in CLUMPS, especially when I used their shampoo. I should've stopped using it right away but since it had never happened, I thought maybe it was a 1-time fluke or even my hair just having to get used to a new product. I used it a few more times but didn't use their shampoo. My hair still fell out by the handful. I cancelled my subscription and started using over-the-counter coloring and the problem stopped. Since I stopped using, my hair stopped falling out in gobs (now, it's the normal few strands per/day). Hopefully this review helps others.  *Id.*

- If I could give negative stars I would. ***This company fraudulently sells products under the guise that it is chemical free and safe on hair. However the opposite is true.*** I am now balding on 1/3 of my head. It has destroyed my self esteem and I'm having to go through the expensive process of attempting to regrow my hair. Do yourself a favor and stay far away from Madison Reed. Thank God there is now a class action lawsuit in the state of New York citing hair loss and their overall cover up of the problem. They like to respond to negative reviews by blaming the victim. That their product is dermatology tested and has been shown to not cause hair loss. The dermatologist they used for this stamp of approval either doesn't have an actual license to practice or they don't mind getting paid to lie. Either way, Madison Reed needs to be permanently shut down and held accountable. Excited for this class action lawsuit to spread nationwide!  *Id.*

- February 2022: ***There is a proposed class action that claims the "salon-quality" products are harsher than the company lets on in that they can cause hair loss, breakage, shedding, scalp irritation and other damage. The products are marketed as gentler on hair because they don't contain ammonia;*** however, one of the

chemicals found in the hair dyes is not only made from ammonia but has been scientifically shown to cause more damage to hair than the chemical it replaced, the case says. Find out more in classaction dot org. *Id.*

As evidenced by the above customer reviews, Defendant's healthful advertising campaign has been extremely effective in convincing people that Madison Reed products are gentler and healthier than other competing products on the market. Defendant took permanent hair color products, which are known to be generally unhealthy by the reasonable consumer of hair color products, and convinced unsuspecting consumers that Madison Reed had made them safer. At three times the price of drug store hair dyes, consumers were led to believe that Madison Reed had actually created a product that did not contain the typical "harsh ingredients" found in traditional permanent hair dyes because how could it justify this 300% price increase unless it had actually made them safer. Sadly, as can be seen by consumer testimonials, Defendant's misleading representations have caused thousands of consumers to suffer adverse reactions, which could have been avoided had the Products' advertising and front label been truthful or not misleading.

76.     What Defendant does to consumers that are allergic to PPD is even more egregious. That is, Madison Reed touts, front and center, that it removed PPD. Due to this representation, consumers that are allergic to PPD have to Madison Reed Products. Sadly, Madison Reed does not information these consumers of the risk that one out of every two people allergic to PPD is likely to suffer an allergic reaction to PTDS as well. Below are just a few of those consumers' experiences, which were posted on the I Read Labels For You website in response to an article reviewing the Products:

- November 2015: WARNING: If anyone has allergies with common hair dyes Madison Reed is NOT a safe alternative!!!

  Thank you for your information on Madison Feed hair dues and their not-so-safe chemical substitution chemical substitutions. I wish I would've read this before I used their product because I'm having a allergic reaction to it right now. I love having black hair, but developed a severe allergy after years of use so I had to stop. The doctors said *I was allergic to PPD which I see in all commercial hair dyes. I thought Madison Reed would be safe to use, but it's not!! I didn't have a reaction on my write from the patch test so I went ahead with dying my hair. I must have done the test wrong because my scalp is on fire now and welting up in hives just like PPD dyes.* I hope I

don't end up in the hospital from this.   https://ireadlabelsforyou.com/madison-reed-hair-dye-review/

- January 2016: "*I have been having an allergic reaction to Madison Reed hair color for a month now. It's jut as bad as PPD!* Never will dye again! Going gray! Not worth it!"  *Id.*

- January 2017: Madison Reed uses a PPD derivative called PPD-sulfate. Someone at Madison Reed confirmed this. This version of PPD tricked some people's bodies into thinking they were different substances and they didn't react to the allergy but 43% of people in their study still reacted. 43%!!!! That is HUGE! *Needless to say I had a horrible reaction to the PPD derivative and a week later am still itchy and red all over. This product is should NOT be recommended if you have a hair allergy. They are being very sneaky about all of this.*  *Id.*

- September 2020: *After years of not dying my hair because of a PPD Allergy, I found Madison Reed and thought it would be safe to dye my hair again.   My scalp is full of hives all down the back of my neck.*  Down my spine around my rib cage on the backside.  I also put some of that on my eyebrows and I have hives there as well.  *It seems as though it goes into your bloodstream kicks out through your spine the same way the PPD allergy affected me.*  It would run a sort of hives rash down my back and wrap around the sides of my ribs.

  THINK TWICE BEFORE USING MADISON REED'S PPD FREE HAIR DYE.  *Id.*

(emphasis added).   Thus, as shown above, Defendant's very effective advertising campaign tricked unsuspecting consumers with serious allergies to PPD into believing the Products do not contain the offending ingredient.  In addition, the Products' ingredient list does not help the consumer figure out that PPD was replaced with another "offending" ingredient because PPD's replacement's is listed as toluene-2, 5-diamine sulfate, which due its name would not appear to be related to PPD, as well the fact that Defendant does not warn consumers that PPD was replaced by something that can also cause an allergic reaction people.

77.     As shown below, Defendant attempts to conceal its misleading and deceptive conduct by making it difficult for aggrieved consumers to post complaints on the Madison Reed website.

- October 2020: *I have used this horrible product for 4 months now and ever since my hair has been falling out in large amounts and the texture of hair has gotten dry and frizzy.* The color does not last more than 2-3 weeks. Last used the product 3 weeks ago and still experiencing significant hair loss. *I tried but it is so difficult to write a review on their site.* Stay Away from this product which has ethanolamine instead of ammonia which is known to cause more hair loss.                *Id.*

*https://www.trustpilot.com/review/madison-reed.com?page=7 (last visited on Feb. 21, 2022).*

- June 2021: I've colored my own hair many times without issue.  I had started being a little fancy and going to a salon before the pandemic. My roots were getting crazy, so I tried this brand. ***I followed the instructions, but holy moly, I've never experienced damage like this before, not even when I bleached my own hair.*** I had to pre-condition my hair before shampooing for weeks. The color was off too.  I reached out to their CS and instead of offering me a refund, they suggested I order more color to dye it again. There was no way…. ***It's almost impossible to leave a negative review on their site.*** And while I've unsubscribed from their emails multiple times, I still get marketing emails from them.  https://www.trustpilot.com/review/madison-reed.com?page=4 (last visited on Feb. 21, 2022).

Thus, it is no wonder that Defendant's website only shows a handful of comments.  Clearly, Defendant is suppressing negative customer reviews in order to hide its unlawful and shameful conduct.

78.     Finally, as shown below, even Defendant's male customers are suffering adverse reactions to their faces and beards.

- January 2021: I got the mens product for my beard. I was not hugely surprised the color did not take as grey doesnt absorb well. ***What I did not expect was my face to get red, blotchy and itchy but it is A MESS. I called M.R. to ask for advice as I am sure this has happened to other.*** After being on hold for 10 mon and then being put on hold again for 12 min I was told someone would get back to me "when they can". I have since gotten a form letter email stating that someone will be in touch within 3 days. Questionable product but terrible customer service. https://www.trustpilot.com/review/madison-reed.com?page=6 (last visited on Feb. 21, 2022)

- February 5, 2020: This product is AWFUL! ***I used it once on my beard today and my face has been burning and swollen ever since. There are red spots where my beard has fallen out. This time an allergic reaction, it's a chemical burn!!*** Natural my ass! I want my money back.  Madison Reed!  https://www.trustpilot.com/review/madison-reed.com (last visited on Feb. 21, 2022).

79.     In sum, customer reviews posted by reasonable consumers of hair color products have confirmed that Defendant has misled consumers into believing its Products are gentler, safer and healthier, as well as devoid of "harsh ingredients" and full of "good stuff," despite that Madison Reed knows full-well that its Products routinely cause people to suffer adverse reactions, including allergic reactions, scalp irritation, hair loss, breakage and shedding, among others.

1

**VI.  Plaintiffs' Reasonable Reliance On Defendant's False and Misleading Statements**

2

3

4

80.     Through a friend, Plaintiff Brown learned about the Products.  Prior to purchasing the Products in early 2016, she researched them on Defendant's website.  There she read the following statements regarding the healthfulness and safety of the Products:

5

- COLOR YOUR HAIR HEALTHY Free of harsh chemicals & full of natural nutrients

6

- HEALTHIER HAIR COLOR THAT WORKS

7

- BETTER FOR YOU Ammonia, Resorcinol, and PPD-Free with No Parabens Added

8

9

10

- Don't sacrifice your hair to get rich long-lasting results.  Our advanced formula delivers luminous shine and ***100% gray coverage*** without the stink, burn or itch of the harsh chemicals found in other colors (emphasis in the original),

11

12

13

14

- Smaller color molecules, called micropigments, create a gentler coloring process that doesn't require ammonia to aggressively open the hair cuticle to deposit the color the way other dyes do.  Our formula has no pungent smell, leaves hair stronger and allows it to hold color longer.

15

16

17

18

19

81.     Although all of these statements are deceptive, the last one is particularly egregious since ethanolamine is used in place of ammonia to open the hair cuticle to deposit the color.  Not only does Defendant not mention that fact but its statement implies that the hair cuticle is not open at all.  In addition, despite Defendant's representations to the contrary, the Products do deliver an ammonia-like smell since they are, after all, made with a chemical derived from ammonia.

20

21

82.     Plaintiff Brown also read on Defendant's website the following statements concerning the Products' manufacturing process and quality:

22

- Formulated in Italy Under the Strictest European Union Standards for Health and Safety

21

22

23

- Madison Reed has re-engineered hair color to be healthier, cruelty-free, and still produce salon-quality results.   Our color is handcrafted in Italy, where our color artisans constantly innovate the most effective formulas under the strictest EU standards for health and safety.

24

25

26

27

37

- You deserve better ingredients and performance from your hair color. That's why we removed harsh chemicals, and infused our color with ingredients that improve performance, to make your hair look and feel beautiful.

83.   In addition, Plaintiff Brown read on the packaging of the Products were "Free of" "ammonia," "PPD" and "resorcinol."

84.   On March 10, 2018, Plaintiff Brown visited Defendant's website in order to request an earlier shipping of the Products.[15]   Upon entering and arriving at the website's landing page, as shown below, she was met with the statements "Ammonia Free" and "Salon-quality," which she relied on in continuing to purchase the Products and further confirmed the messaging that she relied on when she first started purchasing the Products.



85.   The above screenshot was taken from the Wayback Machine Archives website Defendant's landing page as it existed on February 27, 2018.[16]   While the webpage did change aesthetically by March 15, 2018, and until discovery Plaintiffs will not know which version of it existed on the date that Plaintiff Brown accessed it, the "Ammonia Free" representation remained at the very top of the page to greet consumers upon entering Defendant's website.[17]

---

[15] Declaration of Maureen Watson In Support of Motion to Compel Plaintiff Molly Brown to Individual Arbitration and Dismiss or Stay Her Claims (¶15.g), *Brown v. Madison Reed, Inc.*, Case No. 3:21-cv-01233-WHO (Dkt, 15-1).
[16] *See* https://web.archive.org/web/20180224065303/https://www.madison-reed.com/.
[17] *See* https://web.archive.org/web/20180316223836/https://www.madison-reed.com/.

86.     On September 3, 2017, Plaintiff Brown went onto the Madison Reed website to the change the color of the Products she had been purchasing from Defendant.  *Id*. ¶15.e.  Upon logging onto the website, displayed in the top third of the landing page, as shown below, she was presented the statements "Salon Gorgeous" and "Ingredients with Integrity" and "Introducing the firs smart 6-free hair color – free of ammonia, resorcinol, . . . PPD."[18]   Plaintiff Brown relied upon those statements in continuing to purchase the Products.  The statements further confirmed the messaging that she had relied upon when she first started purchasing the Products.  The website screenshots below had to be split because of the way they appear on the Wayback Machine Archive, which likely does not show as much of the webpage that would be seen by consumers on their computer screen at the time that they first access it; however, even on the Wayback Machine Archive, one can see the top portion of the "Ingredients with Integrity" portion, which is likely to cause the reasonable consumer to scroll down to view it.



---

[18] Per the Wayback Machine Archive, Defendant's website looked as shown above between August 23, 2017 (https://web.archive.org/web/20170823213548/https://www.madison-reed.com), and September 29, 2017 (https://web.archive.org/web/20170929215714/https://www.madison-reed.com).

Despite the evolving messaging and physical characteristics of the website, one message remained constant throughout the time that Plaintiff Brown purchased the Products: they were "free of" chemicals considered "harsh" or bad, like ammonia, and thus healthier/better for human use.

87.     Plaintiff Brown relied on the above statements in making her decision to purchase the Products.  Based on the above statements, Plaintiff Brown believed that the Products were gentler, safer, and healthier alternatives to traditional hair color products. A significant portion of targeted consumers, acting reasonably in the circumstances, could be misled like Plaintiff Brown by the label's representation that the Product was "Free of" "ammonia," "PPD" and "resorcinol" and the website statements identified above that the Products would be gentler, safer, and healthier than other hair coloring products when the Products in truth are not.

88.     Plaintiff Brown would purchase the Products again in the future if the Products were reformulated so that they truly contain ingredients that are better for hair health and less harmful to human health than traditional hair color products.  Plaintiff Brown does not have the requisite experience or knowledge to discern based on the Product packaging or Defendant's website whether the Products have been improved so that they contain ingredients that are, in fact, gentler, safer, and healthier than ingredients in traditional hair color products.

89.     Plaintiff Sheffler saw the *Better Ingredients* commercial[19] on the Spectrum app around February 2021. The screenshots below show several relevant portions of that commercial.  The commercial's narrator says, in part, the following: "We started by throwing out the usual 'harsh ingredients,' instead Madison Reed is packed with all the things healthy hair does."  At the moment the narrator says "harsh ingredients," the words "Ammonia," "Resorcinol," and "PPD" immediately appear on the screen.  At two different times during the commercial, the consumer is presented the following statement, "***Healthier*** Hair Color That Works." (emphasis added).

---

[19] iSpot.tv (2015) https://ispot.tv/a/73x8.

SECOND AMENDED CLASS ACTION COMPLAINT





41

1
2
3
4
5
6
7
8
9
10
11



12   90.   After watching the commercial, Plaintiff Sheffler went onto Defendant's website to
13  research the Products further.  Specifically, she went to the "About" tab and then clicked on "Our Story,"
14  where she read the following:

15
16
17
18
19
20
21
22

**WE STARTED MADISON REED WITH A SIMPLE MISSION:**
To provide the best, most luxurious hair color, made with ingredients you can feel good about.

We are a hair color company built on integrity, innovation, and love—for you and for your hair color. We've partnered with honest and transparent manufacturers in Italy—operating under strict EU regulations—to formulate a collection of professional, high-performance hair color and care products.

At the forefront of innovation, we created the first ever Smart 8-Free permanent hair color free of harsh ingredients: ammonia, parabens, resorcinol, PPD, phthalates, gluten, SLS, and titanium dioxide. And we added hair-loving nutrients including keratin, argan oil, and ginseng root extract to protect and pamper your hair.

Screenshot of Defendant's Website during February 2021.

23
24
25
26
27

SECOND AMENDED CLASS ACTION COMPLAINT

91.     Plaintiff Sheffler also went to the "Ingredients" page on the website, shown below, where she read the following messaging touting the "safety" of the Products, which were free of "ingredient offenders" such as ammonia:



Screenshot of Defendant's Website during February 2021.

92.     The above messaging reinforced and reconfirmed the messaging the Products were free of certain harsh ingredients such as ammonia, resorcinol and PPD just as Plaintiff Sheffler had learned from the commercial she saw advertising the Products.

93.     Plaintiff Sheffler would purchase the Products again in the future if the Products were reformulated so that they truly contain ingredients that are better for hair health and less harmful to human health than traditional hair color products.  Plaintiff Sheffler does not have the requisite experience or knowledge to discern from the Product packaging whether the Products have been improved so that they contain ingredients that are, in fact, gentler, safer, and healthier than ingredients in traditional hair color products.

94.     Moreover, Plaintiffs still faces the risk of actual and imminent future harm because even though they are now aware of the ingredients ethanolamine, PTDS and 2-methyresorcinol and could in the future confirm using the ingredient list whether they are present in the Product or not, they do not have

the requisite experience and knowledge to know whether any future replacements of these harmful ingredients will be better or worse for her health.

95.    For example, Defendant replaced ammonia with ethanolamine.  However, Defendant could have also replaced ammonia with a couple of other ingredients that perform a similar function to ethanolamine (and ammonia).  Moreover, depending on those other potential replacement ingredients' usage, they can actually be worse to hair and human health than ethanolamine (or ammonia).  Thus, even in the event that Plaintiffs can now read the ingredient list to see whether ethanolamine is present or not, they would not have the requisite experience or knowledge to know whether the lack of ethanolamine means (i) that there are no other ingredients present that would be required to open the cuticle, like ethanolamine or ammonia, (ii) whether ethanolamine was replaced by another ingredient and the name of its replacement or (iii) in the event ethanolamine is not listed on the ingredient list, whether any potential replacement of it is better or worse to hair and human health than ethanolamine (or ammonia).

96.    In other words, because Plaintiffs are not a chemists working in the cosmetics industry, they still faces an actual and imminent risk of future harm because they will not be able to determine whether a reformulation of the Products lacking the disclosure of "ethanolamine" in the ingredient list will be safer than the Products' present formula or will be as presently represented by Defendant that it is gentler, safer and healthier and does not contain "harsh ingredients."  For the same reasons, they face an actual and imminent risk of future harm regarding any potential replacements to PTDS and 2-methyresorcinol, and all of the other "harsh ingredients" removed by Defendant from the Products.

97.    To further illustrate the very confusing nature of the Products' ingredient list that renders it wholly-unintelligible to the reasonable consumer, below is a photograph of it on the Products' labeling:[20]

---

[20] Copied from a filing by Defendant in *Brown v. Madison Reed, Inc*., Case No. 3:21-cv-01233-WHO, Dkt. 30.

IMPORTANT SAFETY WARNINGS
ALL PERMANENT HAIR COLOR CONTAINS INGREDIENTS WHICH CAN
CAUSE AN ALLERGIC REACTION, WHICH IN RARE CASES, CAN BE
SEVERE. THEREFORE, YOU MUST FOLLOW THESE PRECAUTIONS:
DO NOT USE IF:
• YOU HAVE ALREADY HAD A REACTION TO A HAIRCOLOR PRODUCT
• YOU HAVE SENSITIVE, IRRITATED, OR DAMAGED SCALP.

CONDUCT A SKIN ALLERGY TEST 48 HOURS BEFORE EACH TIME YOU
COLOR (SEE INSIDE BOX), EVEN IF YOU HAVE ALREADY USED
COLORING PRODUCTS BEFORE. TEMPORARY "BLACK HENNA"
TATTOOS MAY INCREASE YOUR RISK OF ALLERGY TO THIS PRODUCT.
AVOID EYE CONTACT. IN CASE OF EYE CONTACT IMMEDIATELY
FLUSH WITH WATER. USE THE GLOVES PROVIDED.

THIS PRODUCT IS NOT INTENDED TO BE USED ON CHILDREN. KEEP
OUT OF REACH OF CHILDREN. IN CASE OF REACTION WHILE
COLORING HAIR, SUCH AS A RASH OR BURNING SENSATION ON
THE SCALP, RINSE IMMEDIATELY AND DISCONTINUE USE. CAUTION:
THIS PRODUCT CONTAINS INGREDIENTS THAT MAY CAUSE SKIN
IRRITATION ON CERTAIN INDIVIDUALS AND A PRELIMINARY SKIN
TEST ACCORDING TO ACCOMPANYING DIRECTIONS SHOULD FIRST
BE MADE. THIS PRODUCT MUST NOT BE USED FOR DYING EYELASH-
ES OR EYEBROWS - TO DO SO MAY CAUSE BLINDNESS.

READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE USE.

RADIANT CREAM COLOR - RAVENNA BROWN - 3.5NNN
INGREDIENTS: WATER, CETYL ALCOHOL, PROPYLENE GLYCOL, ETHANOL-
AMINE, CETEARYL ALCOHOL, CETEARETH-25, COCAMIDE MEA,
TOLUENE-2,5-DIAMINE SULFATE, COCAMIDOPROPYL BETAINE,
CETETH-2, 2-METHYLRESORCINOL, POLYQUATERNIUM-6, ARGANIA
SPINOSA KERNEL OIL, HYDROLYZED KERATIN, PANAX GINSENG ROOT
EXTRACT, DIMETHICONE, ASCORBIC ACID, DISODIUM EDTA, SODIUM
SULFITE, SODIUM HYDROSULFITE, SILICA, XANTHAN GUM, BUTYLENE
GLYCOL, P-METHYLAMINOPHENOL SULFATE, 2-AMINO-4-HY-
DROXYETHY-LAMINOANISOLE SULFATE, 2-AMINO-3-HYDROXYPYRI-
DINE, M-AMINOPHENOL, 2,4-DIAMINOPHENOXYETHANOL HCL.

READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE USE.

RADIANT CREAM COLOR - RAVENNA BROWN - 3.5NNN
INGREDIENTS: WATER, CETYL ALCOHOL, PROPYLENE GLYCOL, ETHANOL-
AMINE, CETEARYL ALCOHOL, CETEARETH-25, COCAMIDE MEA,
TOLUENE-2,5-DIAMINE SULFATE, COCAMIDOPROPYL BETAINE,
CETETH-2, 2-METHYLRESORCINOL, POLYQUATERNIUM-6, ARGANIA
SPINOSA KERNEL OIL, HYDROLYZED KERATIN, PANAX GINSENG ROOT
EXTRACT, DIMETHICONE, ASCORBIC ACID, DISODIUM EDTA, SODIUM
SULFITE, SODIUM HYDROSULFITE, SILICA, XANTHAN GUM, BUTYLENE
GLYCOL, P-METHYLAMINOPHENOL SULFATE, 2-AMINO-4-HY-
DROXYETHY-LAMINOANISOLE SULFATE, 2-AMINO-3-HYDROXYPYRI-
DINE, M-AMINOPHENOL, 2,4-DIAMINOPHENOXYETHANOL HCL.
COLOR ACTIVATOR
INGREDIENTS: WATER, HYDROGEN PEROXIDE, CETEARYL ALCOHOL,
SODIUM LAURETH SULFATE, PROPYLENE GLYCOL, DIMETHICONE,
OXYQUINOLINE SULFATE, PENTASODIUM PENTATE, PHOSPHORIC ACID,
TETRASODIUM EDTA, ETIDRONIC ACID.
BARRIER CREAM
INGREDIENTS: WATER, MINERAL OIL, GLYCERIN, PVP, PEG-40 HYDROGE-
NATED CASTOR OIL, STEARIC ACID, ARGANIA SPINOSA (ARGAN) KERNEL
OIL, ACRYLATES/C10-30 ALKYL ACRYLATE CROSSPOLYMER, GLYCERYL
STEARATE, PEG-100 STEARATE, DISODIUM EDTA, ETHYLHEXYLGLYCERIN,
SODIUM HYDROXIDE, PHENOXYETHANOL, FRAGRANCE.
CLEANSING WIPES
INGREDIENTS: WATER, ISOPROPYL ALCOHOL, GLYCERIN, POLYSORBATE
20, SODIUM COCYL GLUTAMATE, SODIUM LAURYL GLUTAMATE, DIACETATE,
SODIUM COCOYL GLUTAMATE, TETRASODIUM FRAGRANCE.
ETHYLHEXYLGLYCERIN, PHENOXYETHANOL FRAGRANCE.
SHAMPOO
INGREDIENTS: WATER, SODIUM LAUROYL METHYL ISETHIONATE, DISODIUM
ETHYLHEXYLGLYCERIN, SODIUM COCOYL ISETHIONATE, COCA
COCAMIDOPROPYL BETAINE, ALOE, BARBADENSIS LEAF JUICE, GLYCOL
GLUCOSE ROOT EXTRACT, ARGANIA EXTRACT

1
2
3
4
5
6
7
8
9
10
11
12
13



14    98.    The reasonable consumer would have to obtain a degree in chemistry to make heads or

tails of anything in the ingredient list except for "water," and perhaps just a couple more commonly

known ingredients; not to mention the fact that it would be virtually impossible to link the "Free of"

ingredients on the front label with their replacements on the ingredient list because they have completely

different names that would make it virtually impossible to know that they were somehow related to one

another, i.e., ethanolamine vs. ammonia.

20    99.    Moreover, while standing in a store aisle trying to make a decision about what hair color

product to buy, it would be unreasonable for Plaintiffs to be required to research via their smartphone

(assuming the they even have one handy and can get a signal inside the store) the dozens of chemicals that

appear in the Products' ingredient list in order to determine whether Defendant's prominently disclosed

statements on its front label, which imply a positive message when it states that the Products are "Free of"

ammonia, PPD, resorcinol, etc. (since Defendant would never advertise that it is "Free of" ingredients that

are considered to be good), to confirm whether (i) the "free of" (or replacement chemicals) where replaced

with something else, (ii) assuming that the reasonable consumer can even determine that from its research

26
27

46

while standing in a store aisle, what the "free of" or replacement chemicals were replaced by and (iii) whether any studies have shown whether the replacement of any of the replacement chemicals was less/more "harsh" than the ingredient it replaced.

100.    Thus, the conspicuous "Free of" ammonia,[21] PPD and resorcinol on the Products' front label communicated to Plaintiffs and members of the Class the false message that the Products were safer because they did not contain those ingredients, even though the replacement for those ingredients were just as bad, some even much worse since they were partly composed of known carcinogens, than the ingredients they replaced; and the misleading quality of that messaging is not effectively cured by disclosing replacement ingredients, which are virtually unknown to the reasonable consumer, in a sea of highly complex, also virtually unknown, chemicals in an ingredient list containing dozens upon dozens of ingredients on the side of the package.

101.    As the result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Products that did not deliver what it promised.  They paid the above sum on the assumption that the advertising and labeling of the Products were accurate and that they were gentler, safer and healthier because they did not contain certain ingredients, even though the replacement for those ingredients were just as bad, some even worse, than the ingredients they replaced.

102.    Plaintiffs would not have paid the money they paid for the Product had they known that the Products were not safe and, that among other things, the ammonia was replaced by a more dangerous chemical made using a known carcinogen and the very chemical they were trying to avoid: ammonia.

---

[21] Unlike ethanolamine, reasonable consumers are well-aware of ammonia and its harmful properties, especially the reasonable consumer of permanent hair color products that tends to be an older adult with plenty of life experience.  A highly corrosive and caustic chemical that may be used for household cleaning, the reasonable consumer has likely seen its packaging, which comes with very strict and ominous warnings about its toxic nature as well as instructions on what to do if skin is exposed to it, or if it is inhaled or ingested.  In addition, the extremely potent, noxious odor is not only indicative of its poisonous and harmful nature, but is probably one of consumers' most despised qualities of permanent hair color products and one which most, if not all, consumers would try to avoid if possible.  In fact, it was this reason why Defendant chose to advertise that the Products were free from ammonia versus the many other chemicals listed on the ingredient list.

## RULE 9(b) ALLEGATIONS

103.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

104.    Who:  Defendant falsely and deceptively labeled and represented that the Products did not contain certain harsh ingredients like ammonia, resorcinol and PPD but, instead, contained ingredients that were better for hair health and less harmful to human health than traditional hair color products.

105.    What:  Defendant falsely and deceptively represented that the Products did not contain harsh ingredients like ammonia, resorcinol and PPD, even though the replacements for these ingredients were just as harsh on hair, if not harsher, and were not less harmful to human health.

106.    When:  During the Class Period, as defined below, Defendant falsely and deceptively represented that the Products did not contain harsh ingredients like ammonia, resorcinol and PPD, even though the replacements for these ingredients were just as harsh on hair, if not harsher, and not much better for human health.

107.    Where: Defendant's false and deceptive representations regarding the Products were made on the Product's packaging and Defendant's website.

108.    How: Defendant made oral and written false and deceptive statements that represented that the Products contained ingredients that were better for hair health and less harmful to human health.

109.    Why: Defendant's false and deceptive representations relating to the Products were made for the express purpose of inducing Plaintiffs, and other reasonable consumers, to purchase the Products. Defendant profited by selling the Products for artificially inflated prices to thousands of consumers.

## CLASS ALLEGATIONS

110.    Plaintiffs bring this action under Fed. R. Civ. P. 23(a)(1)-(4) & (b)(3) on their behalf, and on behalf of all others similarly situated (the "Class"), initially defined as follows:

> All consumers who purchased Defendant's Hair Color Products (the "Class") within the United States and within the applicable statute of limitations period (the "Class Period").  Excluded from the Class are any of Defendant's officers,

directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors and assigns.

111.     At this time, Plaintiffs do not know the exact number of members in the Class; however, given the nature of the claims and the number of stores and online sales platforms selling the Products, Plaintiffs believe that members of the Class are so numerous that joinder of all members is impracticable.

112.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

    (a) Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiffs and those similarly situated using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the ingredients and qualities of the Products;

    (b) Whether Defendant omitted and/or misrepresented material facts in connection with the sales of its Products;

    (c) Whether Defendant participated in and pursued the common course of conduct complained of herein; and

    (d) Whether Defendant's labeling, marketing, advertising, and/or selling of its Products as being free from "ammonia, "resorcinol" and "PPD," as well as other statements made by Defendant stating that the Products were better for hair health and less harmful to human health than traditional hair color products, constitutes an unfair or deceptive consumer sales practice.

113.     Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, purchased Defendant's Products subject to deceptive advertising and labeling and sustained damages from Defendant's wrongful conduct.

114.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the Class.

115.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

116.     The prerequisites to maintaining a class action for injunctive relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

117.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

## TOLLING OF THE STATUTE OF LIMITATIONS

### I.  Plaintiffs Are Entitled to Equitable Tolling Under the Discovery Rule

118.     Plaintiffs and the Class members did not discover, and could not have discovered, through the exercise of reasonable diligence, the full and complete nature of the defect and risks associated with normal and foreseeable use of the Products.

119.     Within the period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendant was--and still is--actively concealing and misrepresenting the true risks associated with normal use of the Products.

120.     Plaintiffs and the Class members had no realistic ability to discern the risks associated with normal and foreseeable use of the Products until--at the earliest--after they suffered severe, adverse reactions to the Products. And even then, Plaintiffs and the Class members had no basis to discover their causes of action because of Defendant's misleading statements and active concealment of the true nature of the defect and risks associated with normal and foreseeable use of the Products.

SECOND AMENDED CLASS ACTION COMPLAINT

121.    Plaintiffs and the Class members also did not discover, and did not know facts that would have caused a reasonable person to suspect that the Products did contain irritants that cause significant risk of adverse reactions and that the Products are not safe, gentle and healthy, and free of harsh ingredients as labeled and marketed.

122.    All applicable statutes of limitation have been tolled by operation of the discovery rule.

**II.    Plaintiffs Are Entitled to Equitable Tolling Because Of Defendant's Fraudulent Concealment**

123.    All applicable statutes of limitation have been tolled by Defendant's knowing, active and ongoing fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

124.    Instead of adequately disclosing that the Products are not safe, gentle and/or free from harsh ingredients and warn of the risks of adverse reactions as discussed herein, Defendant falsely represented that the Products are safe, gentle and "free of harsh" ingredients.

125.    Despite knowing about the problems with the Products, Defendant concealed--and continues to conceal--the nature of the defect and risks associated with use of the Products.  Defendant seeks to downplay the severity of the problem; mislead consumers by representing that adverse physical reactions are related to "pregnancy," "stressors" and "pillowcases" rather than the Products; have not notified or warned Plaintiffs, Class members, and the public of the full and complete nature of the issues and have not issued a recall for the Products.  Moreover, as complained of in the customer reviews listed above, Defendant further conceals consumers' adverse reactions to the Products by making it difficult for consumers to post complaints on the Madison Reed website.

126.    Any applicable statute of limitations has therefore been tolled by Defendant's knowledge, active concealment, and denial of the facts alleged herein, which conduct remains ongoing until this very day.

1

### III.   Defendant Is Estopped from Relying on Any Statutes of Limitations Defense

2

127.    Defendant is, and at all relevant times has been, under a continuous duty to disclose to

3

Plaintiffs and the other Class Members the true character, quality, and nature of defect plaguing the

4

Products.

5

128.    Defendant actively concealed the true character, quality, and nature of the Products and

6

knowingly made misrepresentations about the safety, quality, reliability, characteristics, and performance

7

of the Products.

8

129.    Plaintiffs and the Class members reasonably relied upon Defendant's representations and/or

9

active concealment of these facts.

10

130.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitations

11

in defense of this action.

12

### CAUSES OF ACTION
### COUNT I
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code § 1750 *et seq.*
### On Behalf of the Class

13

14

15

131.    Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing

16

paragraphs as though fully set forth herein.

17

132.    Plaintiffs bring this claim individually and on behalf of the Class for violation of

18

California's Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 et seq. (the "CLRA").

19

133.    Under the CLRA, "goods" means "tangible chattels bought or leased for use primarily for

20

personal, family, or household purposes . . . ." CAL. CIV. CODE § 1761(a).

21

134.    Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or

22

lease, any goods or services for personal, family, or household purposes." *Id*. § 1761(d).

21

135.    Plaintiffs and the Class members are "consumers" under the CLRA.

22

136.    Under the CLRA, "person" means "an individual, partnership, corporation, limited liability

23

company, association, or other group, however organized." *Id*. § 1761(c).

24

137.    Defendant is a "person" under the CLRA.

25

26

27

138.   Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id*. § 1761(e).

139.   Defendant, on the one hand, and Plaintiffs and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other things, Defendant sold the Products to Plaintiffs and the Class members.

140.   Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

141.   Plaintiffs have standing to pursue these claims because they have suffered an injury-in-fact and a loss of money/property as a result of the wrongful conducted alleged herein.

142.   Under California Civil Code section 1770(a):

> (a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> \*　\*　\*　\*　\*

> (5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

> (7) Representing that goods or services are of a particular standard, quality, or grade . . . if they are of another.

> (9)  Advertising goods or services with intent not to sell them as advertised.

*Id*. § 1770(a).

143.   As detailed above, Defendant has violated California Civil Code section 1770(a)(5) by representing that the Products it sold had certain characteristics and benefits that they did not have because the ingredients Defendant used to replace certain "harsh" ingredients contained in traditional hair color products are not better for hair health, or less to harmful to human health, as represented by Defendant.

144.     As detailed above, Defendant has violated California Civil Code section 1770(a)(7) by representing that the Products it sold were of a particular quality or grade even though Defendant sold Products that contained ingredient replacements that were not better for hair health, or less harmful to human health, as represented by Defendant.

145.     As detailed above, Defendant has violated California Civil Code section 1770(a)(9) by advertising and marketing the Products with the intent not to sell them as advertised because Defendant sold Products that contained ingredient replacements that were not better for hair health, or less harmful to human health, as represented by Defendant.

146.     Additionally, or alternatively, Defendant has violated the CLRA by making material omissions.  At the time Plaintiffs and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiffs and the Class members the material fact that the Products contained ingredient replacements that were not better for hair health or less harmful to human health than the ingredients used in traditional hair color formulas.

147.     Indeed, as the manufacturer and seller of the Products, Defendant had exclusive knowledge that the Product were not as represented by Defendant.

148.      When Plaintiffs and the Class members purchased the Products from Defendant, they did not know that the Products were not as represented by Defendant.

149.     Plaintiffs and the Class members would not have purchased the Products from Defendant, or would have paid less for them, but for the misleading representations and/or omissions by Defendant detailed above.

150.     The Products purchased by Plaintiffs and the Class members from Defendant were worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium price for the Products on account of Defendant's misrepresentations and/or omissions detailed herein.

151.     Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions relating to the sale of the Products.

152.     Plaintiffs, individually and on behalf of the Class members, request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant

to California Civil Code section 1780(a)(2). If the Court does not restrain Defendant from engaging in these practices in the future, Plaintiffs and the Class members will be harmed in that they will continue to purchase the Products that are not better for hair health or less harmful to human health than hair color products made using traditional hair color formulas and ingredients.

153. Pursuant to California Civil Code § 1780(a)(1), (a)(3), (a)(4) and (a)(5), Plaintiffs seek individually and on behalf and the Class members actual damages, punitive damages, attorneys' fees and costs of litigation, and any other relief the court deems proper.

154. Pursuant to California Civil Code § 1780(b)(1), Plaintiffs seek on behalf of all Class members who are senior citizens or disabled as defined in California Civil Code § 1761(f) and (g), an additional award of up to $5,000 for physical, emotional or economic damage.

155. Pursuant to California Civil Code § 1782(a), Plaintiffs' counsel notified Defendant in writing by certified mail, return receipt requested, of Defendant's particular violations of § 1770 of the CLRA and demanded that Defendant rectify its violations. Plaintiff Brown sent that letter on January 15, 2021. To date, Defendant has not agreed to rectify its violations of the CLRA. Accordingly, Plaintiffs seek damages on behalf of themselves and the Class.

### COUNT II
**Violation of California's False Advertising Law,**
**CAL. BUS. & PROF. CODE § 17500 et seq.**
**On Behalf of the Class**

156. Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing paragraphs as though fully set forth herein.

157. Plaintiffs bring this claim individually and on behalf of the Class for violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 et seq. (the "FAL").

158. Defendant has violated California Civil Code section 17500 by representing that the Products it sold were of a particular quality or grade that it did not have because Defendant, in fact, sold Products that were not better for hair health or less harmful to human health as represented by Defendant.

159. Additionally, or alternatively, Defendant has violated the FAL by making material omissions. At the time Plaintiffs and the Class members purchased the Products, Defendant had a duty to

disclose to Plaintiffs and the Class members the material fact that the Products contained ingredient replacements that were not better for hair health or less harmful to human health than the ingredients used in traditional hair color formulas.

160.     Indeed, as the manufacturer and seller of the Products, Defendant had exclusive knowledge that the Product were not as represented by Defendant.

161.     When Plaintiffs and the Class members purchased the Products from Defendant, they did not know that the Products were not as represented by Defendant.

162.     Plaintiffs and the Class members would not have purchased the Products from Defendant, or would have paid less for them, but for the misleading representations and/or omissions by Defendant detailed above.

163.     The Products purchased by Plaintiffs and the Class members from Defendant were worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium price for Products that were not as represented by Defendant.

164.     Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions relating to the sale of the Products.

165.     Plaintiffs, individually and on behalf of the Class members, request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein.  If the Court does not restrain Defendant from engaging in these practices in the future, Plaintiffs and the Class members will be harmed in that they will continue to purchase Products that are not better for hair health, or less harmful to human health, as represented by Defendant.

166.     Therefore, Plaintiffs pray for injunctive and other public relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## COUNT III
### Violation of California's Unfair Competition Law,
### CAL. BUS. & PROF. CODE § 17200 et seq.
### Unlawful, Unfair, and Fraudulent Prongs
### On Behalf of the Class

167.    Plaintiffs, individually and on behalf of the Class, repeat and reallege the foregoing paragraphs as though fully set forth herein.

168.    Plaintiffs bring this claim individually and on behalf of the Class for violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 et seq. (the "UCL").

169.    The circumstances giving rise to Plaintiffs' and the Class members' allegations include Defendant's corporate policies regarding the sale of the Products.

170.    Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. CAL. BUS. & PROF. CODE § 17200.

171.    By engaging in the acts and practices described herein, Defendant has committed one or more acts of "unfair competition" as the UCL defines the term.

172.    Defendant has committed "unlawful" business acts or practices by violating the CLRA and the FAL, as detailed above.

173.    Defendant has committed "unfair" business acts or practices by, among other things:

a.    engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the members of the Class;

b.    engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and

c.    engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

174.   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to reasonable consumers, including Plaintiffs and the Class.

175.   Defendant has committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive reasonable consumers that purchased the Products.

176.   Additionally, or alternatively, Defendant has violated the FAL by making material omissions.  At the time Plaintiffs and the Class members purchased the Products, Defendant had a duty to disclose to Plaintiffs and the Class members the material fact that the Products contained ingredient replacements that were not better for hair health or less harmful to human health than the ingredients used in traditional hair color formulas.

177.   When Plaintiffs and the Class members purchased the Products from Defendant, they did not know that those products were not better for hair health or less harmful to human health over hair color products made using traditional formulas and ingredients.

178.   Plaintiffs and the Class members would not have purchased the Products from Defendant, or would have paid less for them, but for the misleading representations and/or omissions by Defendant detailed above.

179.   The Products purchased by Plaintiffs and the Class members from Defendant were worth less than the products for which they paid.  Plaintiffs and the Class members paid a premium price for the Products on account of Defendant's misrepresentations and/or omissions detailed herein.

180.   Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's representations and/or omissions relating to the sale of the Products.

181.   In accordance with California Business and Professions Code section 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

182.    Therefore, Plaintiffs pray for injunctive and other public relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment individually and on behalf of the proposed Class as follows:

A.    An order certifying the proposed Class; appointing Plaintiffs as representatives of the Class; and appointing their undersigned counsel as Class counsel;

B.    A declaration that Defendant is financially responsible for notifying members of the Class;

C.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, and injunctive relief to remedy Defendant's past conduct;

D.    A declaration that Defendant has committed the violations of law alleged herein;

E.    An order enjoining Defendant's unlawful and deceptive acts and practices, pursuant to California Business and Professions Code §§ 17203, 17535, and California Civil Code § 1780, requiring Defendant to remove language from the Products' packaging, marketing, and advertising that represents that the Products contain ingredients that are gentler, safer, and/or healthier than ingredients in traditional hair color products;

F.    An order requiring Defendant to pay actual, statutory, punitive, and all other damages;

G.    An order awarding Plaintiffs and the Class the reasonable costs and expenses of suit, including their attorneys' fees;

H.    An order awarding pre- and post- judgment interest to the extent the law allows; and

I.    Any further relief that the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury for all claims so triable.

SECOND AMENDED CLASS ACTION COMPLAINT

DATED:  February 21, 2021

**REESE LLP**

By:  /s/ Carlos F. Ramirez
Michael R. Reese (State Bar No. 206773)
*mreese@reesellp.com*
Carlos F. Ramirez (Admitted *pro hac vice*)
*cramirez@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
 Facsimile: (212) 253-4272

**REESE LLP**
George V. Granade (State Bar No. 316050)
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
 Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*